Spann *vs.* The State of Georgia.

ENOCH F. SPANN, by his next friend, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

(MONTGOMERY, Judge, was providentially prevented from presiding in this case.)

47  549
98   91
47  549
100  562

47  549
118    7

1. Whether a *certiorari* will lie to review the proceedings before a jury, called under section 4572 of the Revised Code, to inquire into the sanity of a prisoner who has been convicted and sentenced to death, and who is claimed to have become insane after conviction.  Quære.

2. In an inquisition to inquire into the sanity of a man convicted of murder and sentenced to be hanged, and who is claimed to have become insane after the conviction, evidence of the insanity of the prisoner at different times before the conviction, is only legitimate evidence as explanatory and illustrative of insane acts, etc., *since* the conviction, and unless such acts, or some apparent insanity be proven, the evidence of acts and conditions of mind before conviction were properly rejected.

*Certiorari.* Criminal law. Insanity after conviction. Before Judge CLARK. Webster county. At Chambers, July 23d, 1872.

Enoch F. Spann, after his conviction of the crime of murder, and after he had been sentenced to be hung, was alleged to have become insane. The sheriff, with the concurrence and assistance of George W. Davenport, Ordinary of Webster county, under the provisions of section 4572 of the Revised Code, summoned a jury of twelve men to inquire into such insanity. On the 16th and 17th days of July, 1872,

an investigation of this issue was had before the said jury, the said Ordinary presiding. ` Witnesses were introduced to prove Spann insane at different times before his conviction. The Ordinary excluded all such testimony, and counsel for the prisoner excepted.

No evidence of insanity since the conviction was introduced.

The prisoner, by his next friend, W. F. Spann, presented his petition for the writ of *certiorari* to the Honorable James M. Clark, Judge of the Superior Courts of the Southwestern Circuit, alleging the ruling aforesaid as error. The Judge refused to sanction the petition upon the grounds that said ruling was right and proper, and that the writ of *certiorari* does not lie to a proceeding under section 4572 of the Revised Code. Whereupon the prisoner, by his next friend, excepted, and now assigns said ruling as error upon each of the grounds aforesaid.

HAWKINS & GUERRY; W. A. HAWKINS; PHIL. COOK, for plaintiff in error.

C. F. CRISP, Solicitor General; C. T. GOODE, for the State.

McCAY, Judge.

By the laws of England, (and, so far as they are·not altered by statute or by the nature of our government, those laws would seem to be of force here) one under sentence of death might be reprieved, that is, the execution of the sentence might, for good reasons, be stayed for a time. This is wholly distinct from the pardoning power, which in England was entirely with the Crown: 4 Black. Com., 394. A reprieve is, technically, with the Judge. Even when it comes from the King it comes in the shape of a hint to the Judge, who is the actor: 2 ·Hale, 412; 1 Chitty, 758. Ordinarily, it is a discretionary power with the Judge, and is exercised when he is aware of good reason why the prisoner should not be executed, and this action is only to delay the execution until the facts can be looked into: 1 Chitty, 559. A stay of execution

Spann *vs.* The State of Georgia.

is also granted on satisfying the Judge that the convict has become insane, or is quick with child: 3 Inst. Co., 17, 18; 1 Hale, 368; 4 Blackstone's Com., 395. In the latter case the prisoner might demand the stay as a matter of right, since, as another life is in her womb, humanity to that demands the reprieve. But the stay for insanity seems to depend on the discretion of the Judge at common law: 1 Hale, 370. He may call in a jury if he pleases. The whole proceeding is merely a stay of execution, and is based rather upon the public will, and a sense of propriety, than on any right in the prisoner.

By our statute, in the case of a convict becoming insane, it is the duty of the sheriff, with the concurrence of the Inferior Court, to summon a jury of twelve men to inquire into the insanity. No provision is made for the mode of trial; nothing is said as to who shall preside. The jury are simply to make an inquisition. In the case of a pregnant woman, the sheriff, with the concurrence of the Inferior Court, shall select one or more physicians, who shall make inquisition. In either case, if it appear that the fact exists, that the prisoner is insane, or quick with child, the sheriff shall suspend the execution and report the inquisition and suspension to the Judge, who directs the report to be entered on the minutes. The execution is thus suspended until the Judge shall order otherwise, and this he must do whenever he has become satisfied that the cause for stay has ceased. In the case of an insane person, he may call an inquisition or not at his pleasure. In the case of a pregnant woman, the statute simply says, when he is satisfied, " when it shall appear to him :" See Revised Code, sections 4572 and 4573. It is rather a perversion of terms to call an inquisition of this kind the act of a Court, and to exercise in reference to it the writ of *certiorari.* The whole proceeding is rather an inquiry based on public propriety and decency, than a matter of right, and whilst I do not say that a *certiorari* will not lie at all, yet, for myself, I greatly doubt if such was the intent of the law makers. But we see no grounds for the *certiorari* in this case. It is not

pretended that the verdict does not conclude all inquiry as to the insanity of the prisoner at the time of the act done and at the trial. But it is said that any previous condition of insanity may be used to illustrate his present condition. We agree to this.

If there was any evidence of *present* insanity, if it were in proof, that since his conviction he presented by his acts, words, looks and conduct, evidences of insanity, we see no objection to an inquiry into his past life, to see if he had been insane before; such a fact would tend to explain *his present acts.*

We have looked carefully into the evidence for some circumstances of present insanity. We see little or nothing, except the opinions of the physicians, based on the history of his life, and on certain notions they seem to have of moral insanity.

We are not disposed to criticise these gentlemens' opinions. They doubtless know far more of this matter, as a medical question, than we do, and there is doubtless such a form of insanity as moral insanity. But a doctor inquires into the sanity of a man for one reason, and the public for another. If he be diseased in body or mind, he is a subject for medical treatment, and the inquiry of the physician is to ascertain if the case calls for treatment. The public wishes to know if the man be so insane as that society is called upon to let him go unpunished if he has committed a crime. Under our law a man is punishable if he knew right from wrong, and this, notwithstanding he may come within some of the classifications of the medical profession as insane.

We see nothing in this evidence to present a case where it is a violation of a proper sense of propriety, or a proper consideration for those on whom God has laid his afflicting hand, to allow the sentence of the law to take its course.

Judgment affirmed.