## CARR *v.* THE STATE.

The writ of *certiorari* does not lie from the finding of a jury summoned under section 4666 of the code, to inquire into the sanity of a person who has been convicted of a capital offense and sentenced to be executed, and who is alleged to have become insane after such conviction. Proceedings under this section are in the nature of an inquisition, and are not judicial in character; and there is no provision of law for reviewing the same.

*Atkinson, J.,* dissenting.

January 13, 1896.

Petition for *certiorari*. Befor Judge Clark. Fulton county. August 24, 1895.

The exception is to the refusal of the judge to sanction a petition for *certiorari*, on the ground that the writ does not lie in the case presented. It appears from the petition, that plaintiff in error was convicted of murder and sentenced to death. Afterwards a petition on behalf of himself, and of another person as his next friend, was filed with the ordinary, for inquisition as to alleged insanity of the prisoner. Code, §4666. A jury was summoned; evidence and argument were heard, and the jury failed to agree; seven of them voting for a verdict of insanity and five for a verdict of sanity. The ordinary and sheriff determined that a majority of such jury could not make a verdict, but the verdict had to be unanimous; and accordingly summoned another jury who, upon hearing evidence and argument, rendered a verdict finding the prisoner sane. The petition for *certiorari* sets out the evidence adduced at the hearing, and assigns sundry errors as having been committed; and thereupon prays for the writ of *certiorari* directing the ordi-

nary and sheriff to certify and send up the record in said case, etc.

*Arnold & Arnold,* for plaintiff in error.

*C. D. Hill, solicitor-general, Ellis & Gray* and *J. A. Anderson,* contra.

LUMPKIN, Justice.

The majority of this court are of the opinion that the inquisition authorized by section 4666 of the code is not a judicial proceeding. That section does not provide either that the sheriff or the ordinary shall preside over the deliberations of the jury, or in any manner participate in the inquiry made by them into the alleged insanity of the convict. It imposes upon neither of the officers mentioned the exercise of any judicial function. Their authority in the premises is confined to the single act of summoning the jury; or rather, the sheriff is to do the summoning, "with concurrence and assistance of the ordinary." The inquisition itself is to be made by the jury, and the section mentioned contains not a syllable conferring any authority upon the sheriff or the ordinary to give any direction whatever to the inquiry which they are to make. If either is to preside, there is no reason for holding that this function shall fall upon the ordinary rather than upon the sheriff, except the fact that the ordinary is a judicial officer of the State, and the sheriff is not. Be this as it may, the law in question certainly does not declare that either of them shall have anything whatever to do with the matter, except to summon the jury. There is an entire absence of any direction as to procedure. No mode of trial is pointed out; nothing is said as to who shall pass upon the competency of jurors or administer the oath to be taken by them, nor as to who shall determine any question which may arise as to the admissibility of evidence. The law is entirely silent as to the manner in which the investigation is to be conducted. The only thing we can find in our code giving the inquisi-

tion the least semblance of a judicial proceeding is the form of oath to be administered to the jury, which is to be found in section 4695; and even that section is silent as to who shall administer the oath, and contains no intimation as to who shall produce and offer the evidence upon which the jury are to base their verdict. Neither of these sections makes any provision as to parties or as to notice. It is not declared upon whose application the sheriff and ordinary shall move in the premises; nor, indeed, that there shall be any application at all; nor does the law seem to contemplate that the solicitor-general or any other counsel shall be present representing the State. Again, no provision is made for reviewing, in any court, the finding of the jury. We are aware that the writ of *certiorari* will lie to correct errors in all "inferior judicatories"; but what constitutes the inferior judicatory in a case of this kind? Whose duty would it be to answer the writ of *certiorari*? We do not see how the sheriff or the ordinary could be required to do so; and if this duty falls upon the jury, which one or more of them is to perform it; or, if it devolves upon all, and they differ among themselves and make conflicting answers, which one is to be accepted as the correct answer?

We agree with the view taken by Judge McCay in the case of *Spann* v. *State*, 47 *Ga.* 549, 551, that the whole proceeding is rather an inquiry based on public propriety and decency, than upon any right of the prisoner; and we are quite confident that it was never intended or contemplated that such a proceeding should be reviewed by the writ of *certiorari*.

It may be that the whole subject needs legislation. If, in the wisdom of the General Assembly, it is deemed advisable that there should be a judicial investigation as to the mental condition of one who has been legally convicted and sentenced to death, and who is alleged to have subsequently become insane, proper provision should be made for holding and conducting such an investigation under

legal rules and with appropriate procedure. We are constrained in the present instance to pass upon the law as it stands in the code; and, so doing, we feel compelled to hold that no court of this State has any legal authority to review any action or finding of a jury summoned under the provisions of the section of the code first above cited.

*Judgment affirmed.*

Atkinson, Justice, dissented.