## LEE *v.* THE STATE.

No reversible error was committed by the judge on the trial of this case, either in charging the jury, or in refusing to charge, or otherwise.

Argued October 19, — Decided October 29, 1903

Inquisition as to insanity. Before Judge Roan. Fulton superior court. June 15, 1903.

*Reuben R. Arnold* and *Harvey Hill,* for plaintiff in error.
*Charles D. Hill, solicitor-general,* contra.

TURNER, J.　Millard Lee was indicted by the grand jury of Fulton county, for the offense of murder.　When the case was called, he filed a plea of present insanity, which was tried by a jury, who found against the plea.　The case then proceeded to trial on the plea of not guilty, on which trial the sole defense was that the prisoner was not of sound memory and discretion at the time of the commission of the alleged crime.　The jury, after an extended hearing on this defense, found him guilty, and he made a motion for a new trial on various grounds.　The motion was overruled, and the defendant brought the case to this court.　Here all the exceptions considered, except as to the refusal of a mistrial claimed on account of a remark of the solicitor-general, related to charges of the court below, and refusals to charge, on the subject of capacity for crime.　All of his contentions were overruled.　116 *Ga.* 563.　The Chief Justice, in rendering the opinion of the court, said: "The defense of the accused was that he had been for years afflicted with epilepsy, and that when he was attacked by it he lost his memory, his reason, and his self-control; that his will was overpowered by the violence of the attacks, and what he did upon such occasions he was unable to resist doing.　On the argument here, his able and learned counsel insisted that the right and wrong test had nothing to do with Lee's case." Ibid. 567.　When the prisoner was convicted in the superior court, he was sentenced to capital punishment; and on the return of the case to the court below, he was resentenced and his execution was appointed for the 23d of December, 1902.　On the day preceding that day, an affidavit was filed as follows:

" Georgia, Fulton County.　Personally came before me the undersigned, Robert W. Westmoreland, who on oath says that he is a practicing physician in the city of Atlanta, said State and county, regularly licensed, and has been since 1875.　As a physician deponent has seen and made careful physical examinations of Millard Lee, who is now under sentence of death, said sentence to be executed on to-morrow, to wit: December 23d.　Deponent has examined Lee before the former trials several months ago, and has also again made a careful physical examination of said Millard Lee this day.　Deponent says that said Millard Lee is not now of sound mind and memory, and that said Millard Lee is now insane.　Said Millard Lee does not now know the difference between

right and wrong. Said Millard Lee's reason is now dethroned, which prevents him from distinguishing right from wrong. Deponent does not believe, as a physician, that said Millard Lee, on account of the condition above described, can be legally executed under the laws of Georgia; and deponent makes this affidavit for the purpose of having said Lee's mental condition inquired into by a jury, under the laws of Georgia, as contained in section 1047 of the Code of Georgia of 1895, and the amendatory act thereof, on page 41 of the Acts of 1897 of the legislature of Georgia.

[Signed]    Robt. W. Westmoreland."

This affidavit was sworn to and subscribed before a notary public of Fulton county. The statute to which the above affidavit refers provides that: "If, after any convict shall have been sentenced to the punishment of death, he shall become insane, upon the oath of a practicing physician the question of the sanity of said convict shall be tried by the superior court of the county in which he has been sentenced, and he shall be entitled to a jury of twenty-four men, from which the State shall be entitled to six peremptory strikes, and the convict to be entitled to six peremptory strikes, said jury to be regularly drawn from the jury-box of said superior court. The following oath shall be administered to the jury, to wit: ' You and each of you do solemnly swear (or affirm) that you will well and truly try this issue of insanity between the State and A B, now condemned to die, and a true verdict give according to the evidence and the law as given you in charge. So help you God.' If it be found by the inquisition of such jury that the convict is insane, the sheriff shall suspend execution of the sentence, and the presiding judge of the circuit shall cause the same to be entered on the minutes of the superior court of the county where the conviction was had. The presiding judge shall charge the jury on the question submitted, as in other cases; and if the jury shall find the convict sane, he shall be entitled to have no other trial as to his insanity upon any new application for a trial thereof. Whenever the affidavit shall be made by a physician as contemplated by this act, the judge of said superior court may call a special session of said court, if the same be not in session, to try said issue." Acts of 1897, p. 42, sec. 5.

His honor, Judge Lumpkin, presiding in the superior court, on considering the affidavit of Dr. Westmoreland above recited, passed

an order to the effect that the issue thus formed in regard to the sanity or insanity of Millard Lee be set for trial on January 12, 1903, at the court-house in said county of Fulton, and that such proceedings be had as are by the law provided in such cases.　It was further provided in said order that notice of the affidavit and of the order be given at once to the Governor of the State, so that he might take such action as he deemed best in regard to a suspension of the sentence to await the trial.　The order further directed that the solicitor-general be notified.　The question made by this affidavit came on to be tried before his honor, Judge Roan, of the Stone Mountain circuit, presiding, at the time appointed.　When the case was called, the solicitor-general presented a demurrer to the effect that the affidavit was not a petition to the superior court, and that the subject-matter of this affidavit could not be inquired into except on petition; and further, because the affidavit was fatally defective, in that it failed to allege affirmatively that Lee became insane after having been sentenced to death.　The court sustained the demurrer and dismissed the proceeding.　To that ruling Millard Lee excepted and brought the case to this court.　This court, on the 8th day of April last, reversed this judgment of the court below on the demurrer.　See 118 *Ga.* 5.　The case was then tried on its merits in the court below at the March term thereof, and on May 14 the jury returned a verdict in favor of the State, finding said Millard Lee to be sane.　Thereupon Lee moved for a new trial, and the motion came on to be heard on June 15 thereafter, under a proper order setting it for trial at that time.　Upon said hearing the court overruled the motion and refused a new trial.　To the judgment overruling the motion for a new trial Millard Lee excepted and assigns the same as error.　The bill of exceptions is an elaborate arraignment of the charge of the court, on many grounds, and the brief of evidence accompanying it is a book of over one hundred and thirty pages of typewritten matter.

On this last trial all the evidence offered by the plaintiff in error seems to have been admitted by the court without objection and without restriction.　Testimony was adduced as to the mental characteristics and the physical peculiarities of Lee from his infancy.　Physicians recited the results of their examinations of the prisoner after his incarceration, their testimony being also based largely upon hypothetical statements of his characteristics

and peculiarities from the earliest period of his life down to the time of this last trial of his sanity. The solicitor-general replied with similar evidence. Whether this proceeding to ascertain whether a convict sentenced to death has become insane after his conviction should involve so wide an inquiry no question seems to have been made, and the admission of evidence seems to have been as liberal as under a writ de lunatico inquirendo. Here, it was admitted by the counsel for the plaintiff in error that there was sufficient evidence before the jury to support its finding, and his contentions were based entirely upon errors imputed to the trial judge. Complaint is made in various grounds of the motion for a new trial, that the judge, in charging the jury, instructed them that it was necessary for it to be shown that Lee was insane at the trial then pending, and that he had become so since his conviction. To this complaint there seem to be two conclusive replies: 1st, the act providing for this proceeding enacts that it shall be had "If, after any convict shall have been sentenced to the punishment of death, he shall become insane;" and, 2d, the scope of the inquiry, as conducted by his honor, embraced so wide a field of investigation, it was quite proper to admonish the jury, in effect, that they were not to try again questions that had been settled by the former verdicts. And it is to be noted here that the judge stated to the jury that the testimony "as to Millard Lee's acts and conduct prior to said verdict and sentence has been admitted, not for the purpose of allowing you to date his insanity, if you find him insane, prior to the verdict and sentence; but this evidence was admitted for the sole purpose, as far as it might do so, in your judgment, to shed light on and as explanatory of any acts or conduct on Millard Lee's part, since the verdict and sentence, which may be claimed to be evidence of insanity on his part since the verdict and sentence." We think his honor's charge was a very proper admonition to the jury, for their guidance under the circumstances, and entirely in accordance with the act of 1897.

It was further contended that the judge erred in charging as follows: "Gentlemen of the jury, in order for you to be authorized, under your oaths as jurors, according to law, to find this issue in favor of Millard Lee, that is, to find that he is insane and that he has become so subsequent to his conviction of and sentence for the said murder, you must believe he is in that condition where he

is not possessed of sufficient memory, intelligence, reason, and will to enable him to distinguish between right and wrong in regard to a particular act he may or might be about to commit; and if an act about to be committed by him be a wrong act, to know and understand that it would be wrong, and that he would deserve punishment for committing it, and if punishment, for such wrong act was inflicted, to comprehend the reason why he was being punished." The counsel for the plaintiff in error in his brief insists that the question here is whether Lee was in such mental condition that society could afford to make an example of him, and that the "right and wrong" test was not at all involved. By recurring to the affidavit of Dr. Westmoreland, hereinbefore quoted and which is the foundation of this proceeding, it will be seen that it lays down that identical test. That affidavit recites that: "Said Millard Lee does not now know the difference between right and wrong. Said Millard Lee's reason is now dethroned, which prevents him from distinguishing right from wrong." The addition made by the judge to this test was entirely appropriate to this proceeding. His charge included the idea that, before the prisoner could be found insane, it should be shown that he would not know he would deserve punishment for doing a wrong act, and, if punishment therefor should be inflicted upon him, would not comprehend the reason why he was being punished.

Another contention urged in behalf of the plaintiff in error was that the judge erred in refusing to give in charge to the jury certain requests presented by his counsel. On examination of the entire charge of the court, we think that these requests, in so far as they were legal and pertinent, were fully covered and included. Complaint was also made that the charges hereinbefore recited, as well as many other instructions of the court excepted to, were argumentative, or amounted to an expression of opinion on the part of the judge concerning the facts of the case. But we are constrained to say that we think that this complaint is not well founded. The charge of the court as a whole was full and complete, and as favorable to the prisoner as he had any right to expect. The only remaining complaint of the plaintiff in error which calls for special notice is that the court below improperly refused to allow the prisoner to retire with the jury for such examination as the jury might see fit to make of him in their room. His honor, on refusing this

request, informed the counsel for the prisoner that he could put his client on the stand and have him examined in the presence of the court and jury ; but·this suggestion of the court was not followed.· We think the judge rightly refused this extraordinary request. The prisoner seems to have had a fair hearing three times before impartial juries upon the question of his sanity ; and there being no evidence of his having become insane since his previous trial, and no error having been committed by the judge of the superior court on this third inquiry, we can see no legal propriety in awarding this wretched man a fourth trial of his sanity before another jury.

The General Assembly, at its last session, passed an act "to provide for the abolition of trials or inquisitions as to the insanity of persons accused of capital offenses after a conviction thereof," and clothed the Governor of the State with authority to have such persons examined by such expert physicians as he may choose, and to act upon their report to him, and commit such persons to the State sanitarium, in the event he shall be satisfied they have become insane since conviction. See *Acts* of *1903*, p. 77. Save as to pending cases, the connection of the courts with proceedings of this nature has thus been ended. This seems to be now the declared policy of the State, after experience had under the act of 1897. *Judgment affirmed. All the Justices concur.*