SOLESBEE *v.* BALKCOM, Warden.

No. 16537.   MARCH 14, 1949.   REHEARING DENIED MARCH 28, 1949.

*Pierce Brothers,* for plaintiff.

*Eugene Cook, Attorney-General, R. N. Odum* and *J. R. Parham, Assistant Attorneys-General,* for defendant.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) The prisoner is shown by the petition to be under a sentence of death after conviction of murder, although the original date for electrocution was postponed by a respite granted by the Governor of the State. The life of the prisoner is by the conviction and sentence absolutely forfeited, and if execution takes place it will be in virtue of the original sentence. *Baughn* v. *State,* 100 *Ga.* 554, 559 (28 S. E. 68, 38 L. R. A. 577); *Mallory* v. *Chapman,* 158 *Ga.* 228, 231 (122 S. E. 884); *Gore* v. *Humphries,* 163 *Ga.* 106, 111 (135 S. E. 481); *Smith* v. *Henderson,* 190 *Ga.* 886 (2) (10 S. E. 2d, 921); *Fowler* v. *Grimes,* 198 *Ga.* 84, 94 (31 S. E. 2d, 174).

The law affirmatively denies such person any right to demand an inquisition as to his insanity in such circumstances, it being declared by the Code, § 27-2601, that "No person who has been convicted of a capital offense shall be entitled to any inquisition or trial to determine his sanity." Speaking of the act from which this section was codified (Ga. L. 1903, p. 77), it was said in *Lee* v. *State,* 118 *Ga.* 764, 770 (45 S. E. 628): "Save as to pending cases, the connection of the courts with proceedings of this nature has thus been ended. This seems to be now the declared policy of the State, after experience had under the act of 1897." A stay of execution is not based on any inherent right of the prisoner. 14 Am. Jur. 804, § 48. Any investigation into his alleged insanity is in no sense a trial of the offense for which he was indicted and convicted, but arises out of a sense of public propriety and decency that one, though legally convicted and sentenced, should not suffer death during his mental incapacity to realize his situation and perhaps invoke some remedial meas-

ure in his own behalf.  *Spann* v. *State,* 47 *Ga.* 549; *Carr* v. *State,* 98 *Ga.* 89 (27 S. E. 148) ; *Baughn* v. *State,* supra; 14 Am. Jur. 806, § 51.   In keeping with this sense of propriety, it is provided in the Code, § 27-2602, that the Governor may, in his discretion, have such person examined by such expert physicians as he may choose, and if he shall determine from the report of the physicians that the accused is insane, he shall have the power of committing him to the Milledgeville State Hospital until the restoration of his sanity.   Under the Code, § 27-2603, providing for the reception into the State hospital of the prisoner, if found insane, it is stated that all the provisions of the law relating to insane persons under sentence of imprisonment in the penitentiary shall apply to such insane person as far as applicable.   It is admitted in the petition for habeas corpus that such an examination as above referred to was made in the present case, and that the prisoner was found sane; but it is contended that such consideration shown the petitioner was merely an act of grace by the Governor and was not a substantial equivalent of due process of law, which the petitioner is entitled to have granted him under some provision of law whereby his alleged insanity will be investigated through mandatory judicial procedure, by notice and hearing, rather than by some commission of physicians which the Governor *may* in his discretion appoint.   The procedure authorized for investigating the alleged insanity of the condemnee is, as properly termed by counsel for the petitioner, an act of grace, which, as hereinbefore shown, arises solely out of public propriety and decency.   However, in the absence of statute, the prisoner has no right, even where an investigation is made, to have the question of his alleged insanity tried by a jury.   24 C. J. S. 202, § 1619; 14 Am. Jur. 807, § 53.   Cases are cited by counsel to the effect that one entitled to notice and hearing is deprived of due process of law when such benefits are not afforded him. These are clearly distinguishable, in that here no right exists in the prisoner to any inquisition or trial.   The due-process clause of the State and Federal Constitutions has no reference to mere concessions or privileges which may be bestowed or withheld by the State at will.   *Schlesinger* v. *Atlanta,* 161 *Ga.* 148 (129 S. E. 861) ; *McKown* v. *Atlanta,* 184 *Ga.* 221, 222 (3, 4) (190 S. E.

571). In *Baughn* v. *State*, supra, this court had under consideration § 1047 of the Code of 1895. That section provided for the summoning by the sheriff and ordinary of a jury to inquire into the alleged insanity of one who had been sentenced to death after conviction. It was held by this court that a refusal of a judge to enter upon a judicial investigation, as contended for by a friend on behalf of the prisoner, was not a denial of due process of law. In Nobles *v.* Georgia, 168 U. S. 398 (18 Sup. Ct. 87, 42 L. ed. 515), in affirming the judgment of this court, it was said: "Without analysis of the contention [that the condemnee was entitled to trial by jury in a judicial proceeding], it might well suffice to demonstrate its obvious unsoundness by pointing to the absurd conclusion which would result from its establishment. If it were true that at common law a suggestion of insanity after sentence created on the part of a convict an absolute right to a trial of this issue by a jury and a judge, then (as a finding that insanity did not exist at one time would not be the thing adjudged as to its non-existence at another) it would be wholly at the will of a convict to suffer any punishment whatever, for the necessity of his doing so would depend solely upon his fecundity in making suggestion after suggestion of insanity, to be followed by trial upon trial. . . The question here is, what, after conviction and sentence, was the method by which the existence of insanity in the convict was to be ascertained when a suggestion of such insanity was made." After quoting from certain authorities, the court concluded as follows: "It being demonstrated by reason and authority that at common law a suggestion made after verdict and sentence of insanity did not give rise to an absolute right on the part of a convict to have such issue tried before the court and to a jury, but addressed itself to the discretion of the judge, it follows that the manner in which such question should be determined *was purely a matter of legislative regulation. It was, therefore, a subject within the control of the State of Georgia."* (Italics ours.)

It follows that, having no right inherently or by statute in this State to a judicial investigation as to the alleged insanity of the prisoner, and no contention being made that he was not legally tried, convicted and sentenced, the prisoner is not being denied

due process of law in being detained in the custody of the Warden of the State Penitentiary for electrocution on a new date to be set by reason of the respite which was granted by the Governor. Accordingly, the petition did not set forth a cause of action, and the trial judge did not err in sustaining the general demurrer of the respondent and in dismissing the action and remanding the prisoner to the custody of the respondent.

The cases cited by counsel for the petitioner have been carefully examined, but require no ruling different from that here made. Counsel particularly discuss Phyle v. Duffy, decided by the United States Supreme Court on June 7, 1948, and reported in advance sheets of 92 L. ed. 1107 and advance sheets of Supreme Court Reporter, Vol. 68, p. 1131. The opinion in that case, while making no ruling as to whether or not the condemned person had been denied due process of law, yet contains language which strongly indicates that the California law there involved must afford the condemned person a right to demand and obtain a judicial determination as to his sanity. It is provided in § 1367 of the Penal Code of California that "A person can not be tried, adjudged to punishment, or punished for a public offense, while he is insane," and thereby an absolute right is conferred upon the condemned person. To protect this right the due-process clause of the Constitution may be invoked. But, as pointed out above, the State of Georgia not only does not confer such a right upon a condemned person, but expressly declares that he has no such right (Code, § 27-2601), and gives the State the power to postpone his execution only when he has been found insane by the procedure prescribed in the Code, § 27-2602. Thus is demonstrated the inapplicability to the present case of the rulings and intimations of the United States Supreme Court in the Phyle case. *Judgment affirmed. All the Justices concur.*