No. 44.—William W. Harris *vs.* The State of Georgia.

[1.] This Court will not grant a *mandamus* against a Circuit Judge, commanding him to certify a second bill of exceptions for the same cause, in the same case, the first having been dismissed on the hearing for irregularity.

Application for mandamus against Judge Hill, for refusing to certify second bill of exceptions.

For the facts, see the opinion of the Supreme Court.

K. L. Haralson and R. S. Burch, for plaintiff.

No counsel appeared for the State.

*By the Court*—Lumpkin, J. delivering the opinion.

When this motion was first made we felt considerable embarrassment, on account both of the novelty and magnitude of the question presented for our adjudication. And it is but just to ourselves to say on this occasion, that our successors on this bench will be relieved from many of the difficulties which beset us, as pioneers under the new organization of our judiciary. We are not only forced to decide all questions promptly, and at remote places in the State, where we cannot procure that assistance from books, so essential to the sound and satisfactory administration of justice, but we are often called upon, as in the present case, to pronounce the law upon points that are new to us. It may be that the principles involved may have been well settled elsewhere, but having heretofore no tribunal here, out of which alone such cases could arise, the profession is not prepared by their previous reading for the proper discussion of them.

With what extreme caution, then, does it become us to proceed, with what diligence and care to examine and deliberate, lest we should not only do injustice to the parties before us, but, what is perhaps still more to be deprecated, establish a precedent which we should be compelled to reverse, and thereby diminish the public confidence in the stability of our opinion, or else to adhere to it at the expense of the public justice of the country.

Much, yea every thing, depends on the discreet exercise of the powers of this Court, so far as its permanence, strength, and use-

Harris *vs.* State of Georgia.

fulness are concerned. Our citizens are essentially a law abiding people, and I have no fear but that the judgments of this Court will command their support and confidence, while they are honestly applied, and rendered according to the laws of the land which regulate their exercise. Indeed one of the chief benefits resulting from our new system is, the consciousness in the whole community that we are now under a government of laws, and a corresponding conviction that personal security, personal liberty, and private property, are amply protected.

With these preliminary observations I approach the case before us; and what is it?

William W. Harris was convicted of murder, in Coweta [1.] County, in September last, and sentenced to be hung; through his counsel, he applied to the honourable Edward Y. Hill, the presiding judge, for a bill of exceptions, who signed and sealed the same, in terms of the law, returnable to the late February Term of this Court, at Macon. Upon the hearing the cause was dismissed; and, under the amended constitution creating this Court, and by mere operation thereof, the judgment below stood affirmed, and was so considered and adjudged by this Court.

At the late March Term of Coweta Superior Court, the prisoner (Harris) was brought up by *habeas corpus* for the purpose of being re-sentenced, and his counsel were called on to know if they had any cause to show why the sentence of the law should not be executed. They assigned seven reasons, all of which, except one (fifth) were for alleged errors growing out of the first trial in September, 1846. The Court declined hearing them upon the six grounds, and overruled them on the other, refusing to certify a bill of exceptions, for the reason that *one* had already been signed in the same case. And that if this were not so, it was too late to make the application, when six months, instead of *four days*, the time prescribed, had elapsed since the trial and decision complained of.

This motion is made for a writ of mandamus, to be directed to the judge of the Coweta Circuit, commanding him to sign and seal the bill of exceptions so tendered. There is no appearance in behalf of the State, and hence we are not aided by the research and enlightened by the conflict of discussion which the occasion demanded. Nevertheless, the responsibility of a correct declaration of the law is upon us, with or without the help of argument and authority.

In England, the writ of mandamus, says Judge Blackstone, issues to the judges of any inferior court, commanding them to do justice according to the powers of their office, whenever the same is delayed; for, he adds, " it is the peculiar business of the Court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the Crown or legislature have invested them; and this not only by restraining their excesses, but also by quickening their negligence and obviating their denials of justice." 3 *Black. Com.*

The principles and usages of law which warrant the issuing this writ, are thus laid down by the Supreme Court of the United States, in *Marbury* vs. *Madison*, 1 *Cranch R.* 168, 169. " Whenever there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern, or attended with profit, and a person is kept out of possession of such right, and has no other specific remedy, the court ought to assist by mandamus, upon reasons of public policy, to preserve peace, order, and good government; this right ought to be used on all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one."

In *Sikes* vs. *Ransom*, 6 *John. R.* 279, the question was distinctly made upon an application similar to this, whether the Supreme Court of New York could interfere when the Court of Common Pleas refused to seal a bill of exceptions; and it was decided that they had the power to grant a mandamus, directed to the inferior judicatory, commanding the judges to seal a bill of exceptions, or to amend it, according to the truth of the case.

From these definitions and decisions, and numerous others which might be adduced, we should hold, were it necessary, that the power of this Court to issue this mandatory writ would result from the jurisdiction conferred on it to review and correct the judgments of the Superior Court.

No question however, can arise under the Statute of 1845, respecting our power. By the 4th section of that act, it is made the duty of the judges of the Superior Court to certify and sign the bill of exceptions, provided it be true and consistent with what has transpired in the causes before them. And section 6th declares, " that if any judge of the Superior Court shall refuse to certify a bill of exceptions when properly tendered, the Supreme Court while in session in any district in the State, may issue a writ of *mandamus* to such officer and enforce obedience

thereto if necessary by attachment." 1 *Kelly's R.* vii, viii. And by the 32d Rule of Practice adopted by this Court, all applications for writs of *mandamus* must be made at the first term of this Court wherever holden, and on or before the third day of that term after the alleged default occurs, unless prevented by providential cause. 1 *Kelly's R.* xvi.

Two things then are well established, viz: that this Court has the power to grant this writ, and that the judges of the Superior Courts have no discretion to refuse to certify and sign a bill of exceptions, when properly tendered, if the fact alleged be truly stated, "*si ita est.*" The law is imperative, *quod apponat sigillum suum;* and that not only under the vague and undefined peril of the common law, *et hoc sub periculo quod incumbit nullatores,* &c. for the express penalty prescribed by the statute as we have already seen, is by attachment against the delinquent Judge.

In addition to this, it would seem that the party aggrieved has his action, not only for a false return, but for the failure or refusal of the judge to certify and sign the bill of exceptions when duly taken and tendered. See the opinion of Lord Chancellor King in 1 *Vernon;* of Lord Redesdale in 1 *Sch.* and *Lefr;* of the Court of King's Bench in *Bridgman* vs. *Holt;* of Justice Buller in his *Nisi Prius,* 316; and the Constitutional Court of South Carolina in 2 *McCord.* And I see it stated that there is an original writ for this specific case in the Register, which of itself, has been esteemed sufficient to show what the law is.

Upon the proof then before us, as exhibited in the petition, can we assume that there is sufficient ground for the interposition of this Court? This rule to show cause, is a call upon the judge to explain his official conduct, and implies that a *prima facie* case has been made out, which makes it proper for this Court to know the reasons for his decision. Of course, therefore, it should not be granted, unless the record before us shows mistake, misconduct, or to say the least of it, omission of duty on the part of the Court. We think the affidavit of the relator furnishes no such evidence. The prisoner had his day in court; he had been allowed the full benefit of the act creating this court; a bill of exceptions embracing the same grounds had been once certified by the judge below, sent up by the clerk, heard and determined by this Court. The whole matter had been adjudicated.

It is argued that the defendant had the right upon the return of the *habeas corpus,* to inquire into the legality of the September

sentence.   We are of the opinion, that he had no such privilege. He might possibly have done this had he not elected the other remedy, that is, to seek its reversal by writ of error.   Having adopted this course, and the sentence having been affirmed by his failure to prosecute the appeal successfully, the sentence cannot be impeached afterwards in another form.   He is concluded by his own conduct.

It is further urged that the Court below had no power to re-sentence the defendant.   We maintain that it had the power both under the *Penal Code of* 1833, and independent of it.   The 39*th section of the* 14*th division* provides that, "whenever for any reason any convict sentenced to the punishment of death, shall not have been executed pursuant to such sentence, and the same shall stand in full force, the presiding judge of the Superior Court, where the conviction was had, on the application of the Attorney or Soli-citor General, or other person prosecuting for the State, shall issue a *habeas corpus* to bring such convict before him; or if such con-vict be at large, said judge or any judicial officer of this State may issue a warrant for his apprehension; and upon the said convict being brought before the said judge, either by *habeas corpus* or under such warrant, he shall proceed to inquire into the facts and circumstances of the case; and if no legal reason exist against the execution of such sentence, such judge shall sign and issue a warrant to the sheriff of the proper county, commanding him to do execution of such sentence, at such time and place as shall be appointed therein, which the said sheriff shall do accordingly," &c. *Prince*, 663, 664.

Here the sentence was suspended by the *supersedeas* conse-quent upon the first bill of exceptions, until the same was affirmed by this Court by the dismissal of the case.   It was then in full force.   The Court below therefore, had the right under the Code, upon *habeas corpus*, to command the sheriff to do execution of the sentence.   Besides, the judgment having been affirmed, it imme-diately became the duty of the judge below by the Act of 1845, (and he would have been in default had he omitted it,) to carry it into full effect.   1 *Kelly's R.* viii.   And this he could only do by re-sentencing the prisoner.

And as to the fifth ground taken in arrest of judgment, that the judge had not the proper evidence before him of the disposition made of the previous case by this Court, we are clear that he had; he had the fact duly authenticated by the clerk of this Court

Harris *vs.* The State of Georgia.

that the case was dismissed and the previous sentence affirmed; he needed nothing more to direct his future action in the premises. It is not a case within the reason of the 16*th Rule* requiring the remittitur to contain a copy of the judgment of the Court annexed to the bill of exceptions, and a transcript of the record of the proceedings below, as brought into this Court.

The rule therefore for an alternative *mandamus*, is unanimously refused.