*Shelby Myrick,* for plaintiff in error.
*Walter C. Hartridge, solicitor-general,* contra.

---

### 4645.  GRIFFIN *v.* THE STATE.

### 4648.  McCRARY *v.* THE STATE.

1. An oral motion to withdraw a plea of guilty, made immediately after
sentence, was denied, but leave was granted to put the motion in writ-
ing at a later day during the term and support the same by affidavits.
On such later day a written motion with supporting affidavits was ten-
dered, and also a written motion to set aside the sentence. On each
motion an order was granted, directing that a hearing be had on a
day named and that service be perfected on the solicitor-general. The
written motions were denied and the court declined to recede from its
former decision upon the oral motion.  *Held,* that though the trial
judge certifies that he intended the denial of the oral motion to be a
final disposition of the matter, a writ of error may be prosecuted to
review both the refusal to set aside the sentence and the refusal to
allow a withdrawal of the plea.
2. Judgment is "pronounced," within the purview of section 971 of the
Penal Code, whenever the accused is officially informed by the court of

the sentence to be entered against him. After that time the accused may not, as a matter of right, withdraw a plea of guilty previously entered.

3. While a recommendation that one guilty of a felony of a certain class be punished as for a misdemeanor can only be made by a jury trying the case, a plea of guilty to which such recommendation is added is not void. The recommendation may be treated as surplusage, and the plea be dealt with as an unconditional plea of guilty of the felony.

4. The withdrawal of a plea of guilty, after sentence is pronounced, is a matter addressed to the sound, legal discretion of the trial judge.

5. An appeal to a judge's discretion is an appeal to his judicial conscience. In exercising this discretion the trial judge settles all conflicts in evidence and is the exclusive arbiter of the facts. He has no discretion in reference to a finding of law. The exercise of a sound, legal discretion presupposes an application of settled rules of law to the facts as found by the judge. His failure to correctly apply the law is not so much an abuse of discretion as it is an erroneous judgment, which may be corrected in the reviewing court. The Court of Appeals will never interfere with a finding of law which is correct when applied to any theory of the evidence considered by the trial judge, but if such judgment when so applied is erroneous, this court has jurisdiction to review and correct it.

6. A plea of guilty, being but a confession of guilt in open court, ought to be received with care and scanned with caution. It ought never to be received unless freely and voluntarily made; and if entered under a misapprehension as to its legal effect or the consequences which are to follow, honestly entertained because of representations made or inducements held out either by the court or by counsel for the State, the prisoner ought to be allowed to withdraw the plea, even after sentence, if he moves promptly upon discovering that he has been misled.

7. While the record discloses that the trial judge declined to commit himself in advance in reference to the punishment to be imposed, the undisputed evidence shows that special counsel for the State, with the concurrence of the solicitor-general, entered into an agreement with counsel for the accused, stipulating that, if the accused would pay over certain moneys for the benefit of the creditors of the bank alleged to have been defrauded, they would be allowed to plead guilty to one of the felony indictments, upon the understanding and assurance from special counsel for the State that only a misdemeanor punishment would be imposed. It further appears that when the plea was received, the trial judge knew of the agreement, and that the plea was entered upon the understanding that a misdemeanor punishment would be imposed, and that he consented for all of the indictments, except the one upon which the plea was entered, to be settled upon payment of costs, although the judge had previously declined either to approve or disapprove the agreement. *Held*, that while the counsel had no authority to bind the judge, yet where a motion was made in due time to vacate a sentence of five years in the penitentiary and to allow the plea of guilty to be withdrawn, and the foregoing facts were made to appear, it was error to deny the motion.

8. The agreement made among the attorneys not being binding upon the

trial court, this court will not direct that a misdemeanor punishment be imposed, but rules simply that the accused are entitled, if they so desire, to join issue with the State and go to trial on all of the indictments. If they are legally convicted the punishment; within the statutory limits, is absolutely within the discretion of the trial judge.

DECIDED APRIL 16, 1913.

Indictments for felony; from Clarke superior court—Judge Brand. December 21, 1912.

*E. K. Lumpkin, Holden & Shackelford, Hamilton McWhorter Jr., W. W. Armistead, T. J. Shackelford, S. H. Sibley, H. M. Rylee, E. K. Lumpkin Jr.,* for plaintiffs in error.

*John B. Gamble,* solicitor-general, *Clifford Walker, Cobb & Erwin,* contra.

POTTLE, J. The Athens Trust and Banking Company failed, and, in consequence, a number of indictments were returned by the grand jury of Clarke county against Griffin, the president, and McCrary, the cashier. One of the indictments charged a violation of section 205 of the Penal Code, in that the defendants accepted a deposit of $351.10, knowing at the time that the bank was insolvent, and failed to pay it to the depositor on demand. To this indictment the accused entered a joint plea of "guilty, with recommendation that they be punished as for a misdemeanor." A sentence of five years in the penitentiary was imposed on each of the defendants. Immediately after sentence was pronounced and before it was handed to the clerk or recorded on the minutes, the accused moved orally to be allowed to withdraw their plea of guilty and enter a plea of not guilty, basing their motion upon the ground that they had been induced to plead guilty upon the assurance of the solicitor-general and other State's counsel employed to assist him that the presiding judge would impose sentence as for a misdemeanor. The oral motion was denied, but the court took a recess to a later date, to allow the accused to put their motion in writing and support the same by affidavits. When the court reconvened, the written motion, together with certain affidavits, was submitted, and there was also presented a written motion to set aside the judgment of conviction, both motions being based upon the same grounds and supported by the same evidence. Neither motion was granted, and each of the accused has prosecuted a writ of error to this court. The cases being identical, they were argued together, and they will be dealt with together in the opinion.

1. The trial judge certifies, in effect, that he intended the order overruling the oral motion to withdraw the plea to be final. It appears, however, that upon each of the written motions an order was granted on December 16, directing that the motion be heard on December 21, and that the solicitor-general be served with a copy. As the judge declined to recede from his previous refusal to allow the plea to be withdrawn, and as he considered the written motion and the accompanying affidavits in determining whether he would recede, the situation is substantially the same as if only the written motion had been filed. All this is, however, of no importance, because the accused clearly had a right to file and have determined their motion to set aside the judgment of conviction, and if that motion should have been granted, it will follow, as a matter of course, that the plea of guilty may be withdrawn. The motion to vacate was filed during the term at which the judgment was rendered. During the term all judgments are "in the breast of the court," subject to be modified or vacated for good cause shown. *Florida Central Ry. Co.* v. *Luke,* 11 *Ga. App.* 290, 293 (75 S. E. 270). The accused clearly have the right to have reviewed the judgment refusing to set aside the sentence. They also have the right to call in question the correctness of the decision declining to allow the withdrawal of their plea. The result to them will be the same if either judgment is wrong, since, if they are permitted to withdraw their plea of guilty, the judgment upon the plea will be null, and if the latter judgment be vacated, the case will stand as if no sentence had been pronounced, and their motion to withdraw their plea of guilty, enter a plea of not guilty, and go to trial, must be sustained.

2. Upon arraignment a prisoner is required to answer whether he is guilty or not guilty. If he answer "guilty," such plea shall be immediately recorded on the minutes, "and the court shall pronounce upon such prisoner the judgment of the law, in the same manner as if he had been convicted of the offense by the verdict of a jury; but, at any time before judgment is pronounced, the prisoner may withdraw the plea of 'guilty' and plead 'not guilty,' and such former plea shall not be given in evidence against him on his trial." Penal Code, § 971. If the prisoner "stand mute," the clerk shall record a plea of "not guilty." Penal Code, § 972. The general rule is that "what the judge orally declares is no judgment

until it has been put in writing and entered as such." *Freeman* v. *Brown,* 115 *Ga.* 23, 27 (42 S. E. 369) ; *Easterling* v. *State,* 11 *Ga. App.* 134 (74 S. E. 899). The statute under consideration allows the prisoner, as matter of right, to withdraw his plea before "judgment is pronounced." This necessarily means before the judge has announced what sentence is to be imposed; otherwise, a prisoner would be permitted to speculate upon his punishment, and, if severer than he anticipated, withdraw his plea and take the chances of an acquittal. The purpose of the statute was to prevent this very thing. After the prisoner has been officially informed by the court what his punishment will be, it is too late to withdraw his plea as a matter of right. It appearing from the record that sentence had been pronounced before the accused made known to the court their desire to withdraw their plea of guilty, the correctness of the judgment declining to permit the withdrawal depends upon whether the court had the power to allow the plea to be withdrawn, and whether, if so, the reasons presented by the accused, and the evidence in support of their motion, required that they be permitted to withdraw the plea.

3. The offense with which the accused were charged was one of the felonies which, under section 1062 of the Penal Code, "on the recommendation of the jury trying the case, when such recommendation is approved by the judge presiding on the trial," may be punished as for a misdemeanor; and even without such recommendation the judge may so reduce the punishment. It is contended that the plea of guilty entered by the accused was void, because of the addition of a recommendation respecting the punishment. It is true that such recommendation had no place in the plea. The plea was one of guilty to a felony. The addition of the words respecting the punishment was nothing more than a suggestion of the accused, concurred in by the solicitor-general, that a misdemeanor punishment be imposed. It was no more than if the plea had contained a recommendation that a sentence of one year in the penitentiary be entered. But the addition of the recommendation in no wise affected the plea. The plea stood as a confession of guilty of the offense charged in the indictment, and the recommendation could be treated as surplusage.

4. Had the court the power to allow the plea of guilty with-

drawn after sentence had been pronounced? It is argued that, as the statute provides that the plea may be withdrawn at any time "before judgment is pronounced," it must follow by a negative pregnant that after judgment is pronounced, the court is without authority to permit the plea to be withdrawn. It is well settled that, in the absence of a statutory provision to the contrary, it is in the discretion of the court to allow the plea withdrawn, either before or after sentence is pronounced. State *v.* Stevenson, 64 W. Va. 392 (62 S. E. 688, 19 L. R. A. (N. S.) 713); State *v.* Stephens, 71 Mo. 535; State *v.* Kring, 71 Mo. 551; Pattee *v.* State, 109 Ind. 545 (10 N. E. 421); State *v.* Shanley, 38 W. Va. 516 (18 S. E. 734); Clark *v.* State, 57 N. J. L. 489 (31 Atl. 979); Commonwealth *v.* Mahoney, 115 Mass. 151; U. S. *v.* Bayaud, 23 Fed. 731; Beatty *v.* Roberts, 125 Iowa, 619 (101 N. W. 462); State *v.* Richardson, 98 Mo. 564 (12 S. W. 245); Mounts *v.* Commonwealth, 89 Ky. 274 (12 S. W. 311); People *v.* Lee, 17 Cal. 76; State *v.* Williams, 45 La. Ann. 1356 (14 South. 32); Krolage *v.* People, 224 Ill. 456 (79 N. E. 570, 8 Ann. Cas. 235); Pope *v.* State, 56 Fla. 81 (47 South. 487, 16 Ann. Cas. 972); Little *v.* Commonwealth, 142 Ky. 92 (133 S. W. 1149, 34 L. R. A. (N. S.) 257, Ann. Cas. 1912 D, 241). The question is settled in this State by *Davis* v. *State,* 20 *Ga.* 674. There a plea of guilty was entered and sentence imposed. Upon a showing at the second term after the sentence was imposed, that the plea was entered by mistake, the accused having intended to plead to another indictment, he was allowed to withdraw the plea and substitute a plea of not guilty. This decision settles the question of the power of the court; for if the court was wholly without authority to allow the plea to be withdrawn after sentence, it could no more have allowed it done to correct a mistake than for any other reason. In the light of the well-settled rule where the matter is not controlled by statute, and in view of the decision of the Supreme Court of this State in the *Davis* case, a proper construction of our statute is that before sentence, the prisoner may, as matter of right, withdraw his plea, without assigning any reason for so doing; and after sentence his motion to do so is addressed to the sound legal discretion of the presiding judge.

5. An appeal to a judge's discretion is an appeal to his judicial conscience. This discretion must be exercised, not in opposition to, but in accordance with, established rules of law. It is not an arbi-

trary power, but one which must be exercised wisely and impartially. In its practical application in this State, judicial discretion is substantially synonymous with judicial power. We say the judge did not abuse his discretion in refusing an injunction. Why? Because, under the law as applied to some theory of the evidence which the judge in his discretion had the right to accept as true, the injunction was properly refused. And so, in dealing with the general grounds of a motion for a new trial, if there is any evidence to support the verdict, the discretion of the judge in approving the verdict will not be controlled. In no case of conflicting evidence will the judge's finding of facts be controlled by the reviewing court. But if, upon the facts as he found them, the law demands that a particular judgment be rendered, a contrary decision will always be reversed. We sometimes speak of such a decision as an abuse of discretion, but it is nothing more than an erroneous decision, or a judgment rendered in violation of law. The term "discretion" has been defined to be "an impartial discretion, guided and controlled in its exercise by fixed legal principles; a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to defeat the ends of substantial justice." See Words & Phrases, Vol. 3, 2098.

The ruling so often made by the Supreme Court and this court that the discretion of a trial judge will not be controlled, unless manifestly abused, means simply that the reviewing court will not control his finding of facts upon conflicting evidence. If upon these facts an erroneous finding of law be rendered, it will be set aside, but if that judgment be sound as applied to his finding of facts, the reviewing court will not interfere. See *Jackson* v. *State,* 99 *Ga.* 209 (25 S. E. 177), where a judgment refusing leave to withdraw a plea of guilty was affirmed. It is really misleading to speak of the trial court's action as an abuse of discretion. Men's rights, both of person and of property, are regulated by fixed legal principles. In passing upon them, whether at law or in equity, the court must regard these principles. It has neither discretion nor power to do otherwise. If the judge fails to apply them in a given case, he has simply made an erroneous judgment, which can be corrected on review. Primarily, a motion to withdraw a plea or to set aside a judgment of conviction in a criminal case is addressed to the discretion of the presiding judge. He

hears the reasons for the motion and the evidence in support thereof. If these reasons be good in law and the evidence be undisputed, the matter is no longer one of discretion, but the motion prevails as a matter of legal right. If the prisoner says, "I entered the plea because of a promise that leniency would be shown me, and this promise has not been complied with," and if this be true and be also a good reason in law for allowing the plea withdrawn, then the court has no alternative. The case is taken out of the realm of judicial discretion and the right to withdraw becomes a legal right which must be accorded him. The general rule is that in passing upon the facts, whatever discretion the court has ought to be exercised liberally in favor of the prisoner. State *v.* Williams, 45 La. Ann. Cas. 1356 (14 South. 32).

6. A plea of guilty is but a confession of guilt in open court, and a waiver of trial. Like a confession out of court, it ought to be scanned with care and received with caution. The judge is not bound to receive such a plea at all, and in capital cases frequently declines to do so. Indeed, Blackstone says that in this class of cases the court ought generally to advise the prisoner to retract his plea and plead to the indictment. 4 Bl. Com. 329. A plea of guilty ought never to be received unless it is freely and voluntarily made; and if the prisoner be misled or be induced to enter his plea by fraud, or even by mistake, he ought to be allowed to withdraw the plea. The law favors a trial on the merits. *Gauldin* v. *Crawford*, 30 *Ga.* 674 (5). It does not encourage confessions of guilt, either in or out of court. Affirmative action on the part of the prisoner is required before he will be held to have waived the right of trial, created for his benefit. If he refuses to plead, the court pleads not guilty for him, and he is put upon his trial. The affirmative plea of guilty is received because the prisoner is willing, voluntarily, without inducement of any sort, to confess his guilt and expiate his offense. In some States statutes have been enacted requiring the judge to admonish the prisoner of the consequences before receiving his plea; and it is good practice and in the interest of fairness to do this, even though there is no statute requiring it. There are many cases in the books, and in none of them has the right to withdraw the plea been denied, where it was shown that it was not entered freely and voluntarily and with a full understanding of the consequences which might follow. It has been said that

withdrawal of the plea should be allowed whenever interposed on account of "the flattery of hope or the torture of fear, or inadvertence or mistake," or "in any case where justice requires it." 2 Enc. P. & P. 777. See, also, Id. 780-792. In 12 Cyc. 353, the rule is thus stated: "To authorize the acceptance and entry of a plea of guilty and judgment and sentence thereon, the plea must be entirely voluntary. It must not be induced by fear, or by misrepresentation, persuasion or the holding out of false hopes, nor made through inadvertence or ignorance."

In Krolage v. People, 224 Ill. 456 (79 N. E. 570; 8 Ann. Cas. 253), the rule is thus stated: "The withdrawal of a plea of guilty should not be denied in any criminal prosecution, where it is evident that the ends of justice will be subserved by permitting the substitution of the plea of not guilty. The defendant in a criminal prosecution should be permitted to withdraw his plea of guilty when unadvisedly given, where any reasonable ground is offered for going to the jury; and while this is a matter within the discretion of the court, the discretion is a judicial one which should always be exercised in favor of innocence and liberty." In State v. Stephens 71 Mo. 535, the accused were induced to enter a plea of guilty under the belief that the punishment would be less than the maximum, this belief being induced by the representations of their own counsel, made after a conference with the judge. It was held, in substance, that the court erred in refusing to allow the pleas to be withdrawn, without reference to whether the judge himself did any thing to mislead the accused or their counsel. Among other things the reviewing court said: "Courts have always been accustomed to exercise a great degree of care in receiving pleas of guilty, in prosecutions for felonies, to see that the prisoner has not made his plea by being misled, or under misapprehension or the like." In State v. Kring, 71 Mo. 551, the accused was permitted to withdraw his plea of guilty, after sentence, upon the showing that the plea had been entered in consequence of an agreement with the State's counsel, "apparently sanctioned by the judge," that the sentence should not exceed a certain term of years. In Mounts v. Commonwealth, 89 Ky. 274 (12 S. E. 311), it was said that after sentence the accused should be permitted to withdraw his plea of guilty, which he was induced to enter by the threats or promises either of the court or of the Commonwealth's attorney. Where a plea of guilty in a

murder case was entered by a prisoner through fear that he would be hanged by a mob, he was allowed to withdraw the plea after sentence. Little *v.* Commonwealth, 142 Ky. 92 (133 S. W. 1149, 34 L. R. A. (N. S.) 257, Ann. Cas. 1912D, 241). In those cases where the right to withdraw was denied, the prisoner was not misled into the belief that he would receive a lighter punishment, and in most of the cases the ruling was distinctly put upon the ground that the prisoner was not thus misled. State *v.* Richardson, 98 Mo. 564 (12 S. W. 245); United States *v.* Bayaud, 23 Fed. 721; Beatty *v.* Roberts, 125 Iowa, 619 (101 N. W. 462); Pope *v.* State, 56 Fla. 81 (47 South. 487, 16 Ann. Cas. 972); People *v.* Lennox, 67 Cal. 113 (7 Pac. 260). In State *v.* Reininghaus, 43 Iowa, 149, it was held that the mere statement by the prosecuting attorney of his opinion in reference to the punishment which would be imposed, coupled with the statement that he had no control over the matter, afforded no reason for allowing the plea to be withdrawn.

Of course, neither the solicitor-general nor any other counsel has authority to bind the court in the matter of the punishment to be imposed. Indeed, an extrajudicial agreement by the judge himself would not bind him. Notwithstanding such a promise he might impose a different penalty, and his action in this respect could not be controlled. But if such a promise should be made by the judge, to induce a plea of guilty, and, after the plea was entered the promise should be violated, no one would contend that the prisoner ought not to be allowed to withdraw his plea and have a trial. This would be so, not so much because the judge had broken a promise which he had no right to make, but because the prisoner had been misled to his injury, and had been induced to make a confession by a hope of reward. Now what difference can it make if the hope of reward is engendered by a promise of the State's attorney rather than of the judge. The solicitor is the State's representative; his advice and recommendations are generally followed by the court. Ordinarily a motion to nol. pros. made by him is granted, and so is his advice generally accepted that a plea of guilty be received with a recommendation for a misdemeanor punishment. Prosecuting attorneys usually are able and conscientious public officers, having to a marked degree the confidence of the public and of their professional associates. Well nigh any attorney representing one accused of crime would unhesitatingly accept an assurance from the

solicitor-general that if a plea of guilty with a recommendation should be entered, the recommendation would be respected by the court. It is very reprehensible for counsel for a person accused of crime to seek to have the judge commit himself in advance in reference to the punishment to be imposed, and it is even more reprehensible for the judge to so commit himself. And while the practice of endeavoring, in advance of a plea of·guilty, to obtain through the State's attorney a promise from the court in reference to the penalty to be imposed is not to be commended, yet if it be done and the prisoner and his counsel be thus misled, who shall say that the confession may not be withdrawn? The situation is exactly the same, so far as the prisoner is concerned, if he be misled, not by a promise made by the court, but by an assurance from the prosecuting attorney, or of special counsel employed to assist him and whose services both he and the court accept.

7. Let these principles be applied to the facts of the present cases. The record in each case is somewhat voluminous, but the controlling facts may be briefly stated. The Athens Trust & Banking Company failed, owing its depositors some $90,000. In consequence of the failure a number of indictments were returned against the president and cashier. Messrs. Tuck, Green, and Michael of the Athens bar were retained by the stockholders to represent the interests of the creditors, and to assist in the prosecutions against Griffin and McCrary. Messrs. Holden & Shackelford, Hamilton McWhorter, W. W. Armistead, and Thomas J. Shackelford were retained by Griffin, and Messrs. E. K. Lumpkin and H. M. Rylee by McCrary. Special counsel for the stockholders were naturally and commendably anxious to secure as much money as possible for the depositors. Negotiations were begun between counsel for the accused on the one side, and the solicitor-general and special counsel for the State on the other, which finally culminated in an agreement that the accused should pay over all the money that they could raise, that all of the indictments save one should be settled and dismissed upon payment of costs, and that as to this one a plea of guilty should be entered with the understanding that a misdemeanor punishment should be imposed. None of the counsel for the accused had a conference with the judge, but counsel for the State informed him of the negotiations and the agreement. All of the counsel for the State agree, and the trial judge certifies, that he made

no promise in reference to the punishment, and expressly declined to commit himself. It appears, however, that after the conference with the judge, counsel for the State assured counsel for the accused that in their opinion a misdemeanor punishment would be imposed. Mr. Michael and Mr. Green, of counsel for the prosecution, state in their affidavits that they expressed the opinion to counsel for the accused, after the conference with the judge, that a fine would be imposed on the accused, and that they are convinced the plea was entered in the belief of both the accused and their counsel that a fine would be imposed. Mr. Tuck deposes that he stated to counsel for McCrary, "as emphatically as I knew how, that I was satisfied that the court would impose only a fine on McCrary, and for him not to be afraid to enter his plea." And further he states that "it was distinctly understood and agreed between me and Judge Holden that under no circumstances was any heavier sentence than a fine to be imposed upon Mr. Griffin. We did not even consider the imposing of a chain-gang sentence upon Mr. Griffin." Mr. Tuck further states that the presiding judge was informed in reference to this agreement, but declined to either approve or disapprove the settlement. The solicitor-general, Mr. Walker, states in substance that he was willing for a misdemeanor sentence to be imposed, and so informed counsel for the accused, but that he gave the accused or their counsel no assurance that such a punishment would be imposed, as he had no intimation from the judge and sought none. He further states, however, that in all the conferences it was understood that there was to be a trial of the cases unless the judge gave satisfactory intimation that he would impose a fine as punishment; that "defendants' counsel unquestionably believed that the defendants were to receive a fine, and acted on that belief;" and that "the pleas were entered by counsel for defendants in the full belief that a fine would be imposed. I am satisfied that no such pleas would ever have been entered if counsel for defendants had thought that there was even the remotest probability of a penitentiary sentence."

When the case was called it was ascertained and stated in open court that the accused had paid over all the money they could raise. Thereupon an order was passed by the presiding judge, directing that all of the indictments save the one which had been called for trial be settled upon payment of costs. The other indictments

having been settled, the plea of guilty with a recommendation was received. It must be assumed that before passing this order the judge made the preliminary investigation required by the statute. See Penal Code, §§ 981, 982. If this order was passed and the stipulated amount of money paid over by the accused, the agreement into which the counsel had entered, although wholly illegal and void, was partly executed, and the accused had a right to assume that the remainder of the agreement would be executed by the imposition of a misdemeanor sentence. Mr. Lumpkin, of counsel for Mr. McCrary, remarked in the hearing of the solicitor-general at the time the plea was entered (though it does not appear whether the presiding judge heard the statement) that "we are pleading with the understanding that we are to be punished as for a misdemeanor."

The accused and their counsel all depose on oath as emphatically as possible that they were misled by statements of counsel for the State into the conviction that a fine would be imposed upon the accused. After the plea was entered and before sentence was pronounced, the presiding judge began the reading of a preliminary statement which had been previously prepared, from which we quote the following: "As I understand it, the proposition to settle these cases is this: These defendants have entered a plea of guilty in one of the felony cases, with recommendation on the part of the State's counsel and the solicitor-general that they be punished as for a misdemeanor and that a fine be imposed; and that all other cases pending against them be nol. prossed, and this has been done and the cases stricken from the docket. Mr. Griffin is to turn over to the receivers about $1,600, out of which, I have just been privately informed, his fine must be paid. He has paid to a depositor, whose name was not given, $250. In addition to this, the account which he holds against the bank as president, and the accounts he controls for two depositors, are to be surrendered to the receivers or cancelled. Mr. McCrary is to pay about $2,000 to the receivers. This money is not to be paid to the receivers and these accounts not surrendered, unless the court carries out the agreement recommended." In reply to counsel's contention that they moved to withdraw their plea before sentence was pronounced, the trial judge certifies: "This statement was made by the court and these sentences were pronounced by the court upon these defendants before

Judge Holden or Mr. Lumpkin opened their mouths. I was read-
ing a statement which I had prepared (which is hereby made a
part of this and identified as such by the judge's signature), and
when nearing that portion of it which would indicate to counsel
what the court was going to do, I deliberately and purposely
stopped reading the statement and pronounced the sentence of the
court; which was done, as stated, before Judge Holden or Mr.
Lumpkin said a word. After this was done, Judge Holden arose
from his seat, and after addressing the court in the words, 'If
your honor please,' or 'if the court please,' I interrupted him and
said, 'Judge, I have already sentenced these defendants to the peni-
tentiary for a term of five years each.' Judge Holden then re-
plied, and for the first time, that he wanted to withdraw his plea
of guilty, that he had inquired and had been advised that it was
the custom in this circuit to allow a plea of guilty to be withdrawn.
I then stated that for fear that something like this might happen,
I had on the day before instructed the court reporter to go to the
solicitor's office and get two blank felony sentences and fill them
out in these cases, one against each of these defendants, which he
did; and that he had written the same out and delivered to me, and
that the same had been signed, with the term of sentence put there-
in, by the judge at the time when the court orally pronounced
said sentences, as aforesaid. I also stated that these written sen-
tences were then lying before me on the desk. All of which oc-
curred before any motion to withdraw the pleas of guilty was made."
From the foregoing statement of his honor it must be apparent that
he was fully cognizant of the terms of the agreement into which
counsel had entered, and knew that the plea was entered upon the
understanding and in the belief that a misdemeanor punishment
would be imposed. It is also apparent, from the statement of the
trial judge, that counsel for the accused were not lacking in dili-
gence, and that they moved at the first opportunity presented them
after ascertaining that a felony sentence would be imposed. The
trial judge properly declined to commit himself in reference to
the punishment, but it can not admit of doubt that the accused and
their counsel were misled by representations made by counsel for
the State. These gentlemen are attorneys of high standing, and
the sincerity of their statements can not be questioned.

In the statement of the trial judge which accompanies the record,

the following appears: "Neither of the defendants have at any time ever consulted with the judge about these cases. The judge has at no time intimated or expressed any opinion to either one of the attorneys for the defendants, or the State, that he would allow said cases to be settled upon any sort of terms, or that he would concur in any agreement which the parties might enter into, or carry out any recommendations which they might make. In short, no attorney connected with these cases, either for the State or the defendant, and no other human being, knew what sort of sentences would be imposed in these cases, until they were pronounced by the judge on the bench. . . Every juror, the court reporter, the officers of court, the attorneys present in court at the time (those whom I remember seeing being Messrs. W. M. Smith, J. J. Strickland, Howell C. Erwin, J. B. Gamble, and Judge Andrew Cobb), knew that the court sentenced these defendants to the penitentiary for five years each, before any motion was made to withdraw their pleas of guilty. They also know that Judge Holden, Mr. Lumpkin, Mr. Tuck, Mr. Green, and the solicitor-general plainly and emphatically disclaimed any knowledge of what the court would do, or whether the judge would approve the settlement proposed or not,—each voluntarily and unqualifiedly making the statement in open court that they had no sort of promise or agreement or expression from the judge, and no intimation whatever, that he would approve said settlement, or concur in the recommendations being made. So much for this. . . . At this conference I said nothing to lead the gentlemen present to believe that I would approve the proposition to settle, which they outlined. I did not express nor intimate any opinion as to what I would do in reference thereto. On the contrary, as heretofore stated, I distinctly told them that I didn't know what I would do, and that I would not know until the matter came to a head and was put up to me in court. . . I confess, however, that all doubt and uncertainty were removed and that I instantly made up my mind definitely what I would do, when, in answer to my question, namely, 'What is to become of this money so offered, if the court does not approve the settlement recommended?' Mr. Green replied, ' It would be turned back to the defendants;' and especially so when, shortly thereafter, he privately told me that the agreement was that Griffin's fine was to come out of the money which he was offering to pay."

The trial judge passed upon these motions in the light of his own consciousness that he had done nothing to mislead counsel for the accused; and he took the view that, as the counsel had no authority to bind him, the accused in entering their plea took the risk of his approving the recommendation. All this is unquestionably true, but does it follow that they ought to be deprived of a trial? Their waiver of trial was made under a misapprehension. It may be that they ought not to have relied upon the statements of State's counsel, but it is undisputed that they did so, and in so doing we do not think they were guilty of such negligence as to deprive them of the right to withdraw their waiver of trial. That they were misled can not admit of question. This is the important thing; it is of less consequence that they ought not to have been misled. On its face the plea was an unconditional plea of guilty to a felony, but it was not so in fact. The accused thought they were pleading upon the condition and understanding that their offense would, for the purposes of punishment, be treated as a misdemeanor. We do not think they were guilty of such negligence in having this belief as to deprive them of the right to join issue with the State and to be tried by a jury of their peers. No harm can result to the State in allowing this to be done. If the accused are guilty, it must be assumed that a jury will find them so. If not, they ought not to be punished even by their own consent. The State does not seek a victim, and society is as much concerned in protecting the innocent as in punishing the guilty. It was discretionary with the trial judge whether he would receive the plea of guilty at all. If he knew that it was entered under the mistaken belief, engendered by an agreement of State's counsel, that the punishment would be less than the maximum, the plea ought not to have been received until the accused had been admonished that the judge would not be bound by any such agreement. Of course, in theory, the accused knew that this was true; but if they in fact honestly thought the agreement would be carried out, then they ought to have relief from the plea. If the State is not bound by the agreement its counsel made, then the accused ought not to be held to their waiver made on the faith of such agreement. That the accused were actually misled by the representations of State's counsel is undisputed, and, as illustrating the strong conviction of these able and upright attorneys that the accused had been misled by their

statements, when the trial judge in the exercise of his discretion refused to abide by their agreement, they retired from the case and declined to attempt in the reviewing court to sustain the sentences imposed upon the accused. Though the trial judge did not intend to mislead the accused or their counsel, the reception of the plea without an admonition as to the possible consequences may have had and, under the circumstances, probably did have this effect; and it seems to us that the ends of justice will better be subserved by allowing the accused to go to trial.

8. The accused insist that this court should direct the trial judge to impose a misdemeanor punishment. We have neither the power nor the inclination to give such direction. This is a matter exclusively for the determination of the trial judge. He may even disregard the jury's recommendation on the subject. *Gaskins* v. *State,* ante, 97 (76 S. E. 777). The law has left the matter of punishment, within the statutory limit, absolutely to his discretion, and no other judicial tribunal can control his action in this regard. We have no opinion as to the character or quantum of punishment which should be meted out. If the accused are guilty, they should, and doubtless will, be punished; but as to what that punishment should be, we neither have nor express an opinion, nor is anything now ruled to be construed as even an intimation that the imposition of a fine or of any sentence less than the maximum would be proper. When their guilt shall have been ascertained in the manner required by law, the trial judge may impose such a penalty, within the statutory limits, as his conscience approves. The motion of the accused to vacate the sentence and withdraw their plea of guilty is predicated upon their willingness to have the entry of nolle prosequi upon the other indictments cancelled. Let this be done by proper order; let the sentences imposed upon the accused be vacated and their plea of guilty withdrawn, and let the accused be again arraigned as though no plea had ever been entered.

*Judgment reversed.*