### 30960. ROWLAND *v.* THE STATE.

DECIDED SEPTEMBER 19, 1945.

*R. A. Moore,* for plaintiff in error.
*John W. Bennett, solicitor-general,* contra.

GARDNER, J. We do not deem it necessary to set forth the evidence in the presentment as to the time and place of the alleged attack. It is in sharp conflict, and upon a trial the jury would be authorized to return a verdict of either acquittal or guilty. That is not the question before us. The only question is whether the trial judge abused his legal discretion in denying the motion to withdraw the plea of guilty after sentence had been pronounced. It is true, as contended by the State, that a plea of guilty stands upon the same footing as a conviction of guilty by a jury. *Cummings* v. *Perry,* 194 *Ga.* 424 (21 S. E. 2d, 847); *Jackson* v. *Lowry,* 171 *Ga.* 349 (155 S. E. 466). A plea of guilty is a con-

viction of the highest order and waives all defenses other than that the indictment charges no crime. 14 Am. Jur. 952, § 272. We do not think that the facts of this case are controlled by *Baughn* v. *State,* 100 *Ga.* 554 (28 S. E. 68, 38 L. R. A. 577). It is also conceded that the judge has a right to believe the statement of the sheriff, and in so doing would not abuse his discretion. Likewise, it is not error to fail to furnish the accused with a copy of the indictment and a list of the witnesses, in the absence of a demand. *Fears* v. *State,* 125 *Ga.* 739 (3). It is not reversible error for the court to fail to appoint counsel for an accused, in the absence of a request therefor. *Gatlin* v. *State,* 17 *Ga. App.* 406 (87 S. E. 151). See also *Clark* v. *Cobb,* 195 *Ga.* 633, 640 (24 S. E. 2d, 782); *McGhee* v. *State,* 71 *Ga. App.* 52 (30 S. E. 2d, 54). While the principles thus cited by the State are included in the circumstances concerning the defendant in the instant case, they are urged by the defendant merely as incidents cumulative of the many other circumstances and incidents appearing in the record. To state it differently, the existence of a good many circumstances serve to magnify and reflect on other facts and circumstances in favor of the position of the accused. The abuse of sound legal discretion is not a reproach on the trial judge and does not imply a bad motive. It simply means a discretion that is clearly against the logic and effect of the facts which are urged against such judgment. It is well settled that a motion to withdraw a plea of guilty after sentence is pronounced is within the sound legal discretion of the court, and its judgment should never be reversed unless abused as a matter of law. In *Farley* v. *State,* 23 *Ga. App.* 151 (97 S. E. 870), this court held in effect that, where it appears that the plea was entered under a misapprehension as to the offense to which the defendant was pleading guilty, a refusal to grant a motion to withdraw the plea is an abuse of discretion. Perhaps the most learned decision, and the best reasoning we have read anywhere on the subject as to abuse of discretion in refusing to permit a withdrawal of plea of guilty after sentence will be found in the opinion in *Griffin* v. *State,* 12 *Ga. App.* 615 (6) (77 S. E. 1080), which reads: "A plea of guilty is but a confession of guilt in open court, and a waiver of trial. Like a confession out of court, it ought to be scanned with care and received with caution. The judge is not bound to receive such a plea at all, and

in capital cases frequently declines to do so. Indeed, Blackstone says that in this class of cases the court ought generally to advise the prisoner to retract his plea and plead to the indictment. 4 Bl. Com. 329. A plea of guilty ought never to be received unless it is freely and voluntarily made; and, if the prisoner be misled or be induced to enter his plea by fraud, or even by mistake, he ought to be allowed to withdraw the plea. The law favors a trial on the merits. *Gauldin* v. *Crawford*, 30 *Ga.* 674 (5). It does not encourage confessions of guilt, either in or out of court. Affirmative action on the part of the prisoner is required before he will be held to have waived the right of trial, created for his benefit. If he refuses to plead, the court pleads not guilty for him, and he is put upon his trial. The affirmative plea of guilty is received because the prisoner is willing, voluntarily, without inducement of any sort, to confess his guilt and expiate his offense. In some States statutes have been enacted requiring the judge to admonish the prisoner of the consequences before receiving his plea; and it is good practice and in the interest of fairness to do this, even though there is no statute requiring it. There are many cases in the books, and in none of them has the right to withdraw the plea been denied, where it was shown that it was not entered freely and voluntarily and with a full understanding of the consequences which might follow. It has been said that withdrawal of the plea should be allowed whenever interposed on account of 'the flattery of hope or the torture of fear, or inadvertence or mistake,' or 'in any case where justice requires it.' 2 Enc. P. & P. 777. See, also, Id. 780-792. In 12 Cyc. 353, the rule is thus stated: 'To authorize the acceptance and entry of a plea of guilty and judgment and sentence thereon, the plea must be entirely voluntary.' It must not be induced by fear, or by misrepresentation, persuasion, or the holding out of false hopes, nor made through inadvertence or ignorance.' In Krolage *v.* People, 224 Ill. 456 (79 N. E. 570, 8 Ann. Cas. 253), the rule is thus stated: 'The withdrawal of a plea of guilty should not be denied in any criminal prosecution, where it is evident that the ends of justice will be subserved by permitting the substitution of the plea of not guilty. The defendant in a criminal prosecution should be permitted to withdraw his plea of guilty when unadvisedly given, where any reasonable ground is offered for going to the jury; and while this is a matter within the

discretion of the court, the discretion is a judicial one which should always be exercised in favor of innocence and liberty.' In State *v.* Stephens, 71 Mo. 535, the accused were induced to enter a plea of guilty under the belief that the punishment would be less than the maximum, this belief being induced by the representations of their own counsel, made after a conference with the judge. It was held, in substance, that the court erred in refusing to allow the pleas to be withdrawn, without reference to whether the judge himself did anything to mislead the accused or their counsel. Among other things the reviewing court said: 'Courts have always been accustomed to exercise a great degree of care in receiving pleas of guilty, in prosecutions for felonies, to see that the prisoner has not made his plea by being misled, or under misapprehension or the like.'" It will thus be seen that a plea of guilty is but a confession in open court. Its voluntariness must be guarded with the same degree of carefulness in its reception as a confession out of court. If the reason of the plea of guilty is influenced by the slightest hope of benefit or the remotest fear of injury, it should not be allowed to stand. This does not necessarily mean that the court or the prosecuting officer must have knowledge of any hope of benefit which induced the defendant to enter the plea. It is sufficient if the plea is entered under a misapprehension or a mistake, or the defendant is led to believe, by anyone upon whom he has a right to rely, that he would benefit by entering the plea rather than by submitting his case to a jury. It will be observed that nowhere in this record, except in signing the plea, did the defendant ever confess that he intentionally shot Jack Young. A confession must be plenary. To the contrary, everywhere he speaks in the record he denies it. To those who have had experience in judicial administration, it must appear passing strange that, during the defendant's time in jail before his trial, in his several conversations with the sheriff, he never confessed or admitted that he intentionally shot Jack Young. We find the sheriff telling the defendant that the defendant shot Jack Young and would need a lawyer, and that the sentence could be ten years. Generally, the sheriff of a county is held in the very highest esteem. The people, generally, and defendants, particularly, with whom he comes in contact while in his custody, have the utmost respect for him. They confide in him. They generally regard him as their pro-

tector and their intermediary, operating between them in their unfortunate predicaments and the machinery of the court. The defendants know him better than they do the presiding judge or the prosecuting officer, for oftentimes such other officers are strangers to the defendants—not so with the sheriff. From time immemorial the sheriff has been considered more than a mere arresting or peace officer; he is in a larger sense the protector of the people; and sheriffs are generally men of highest character, and are moved because of their responsibility to intercede in behalf of the unfortunate who are accused of crime. We say this because we are thoroughly convinced that in what the sheriff did and said in the instant case he was motivated by what he was convinced was the best course for the defendant to pursue. Hence we find him telling the defendant in the jail before court convened that the defendant was charged with shooting Jack Young and would need a lawyer. The defendant requested the sheriff to name a lawyer, but, for reasons honorable to the convictions of the sheriff, he would not do so. But we do find the sheriff at this instance stating, "I told him I thought he might get off light by going ahead and entering a plea." In this connection, the defendant testified that the sheriff told him that he would get a light sentence and probably serve it on probation. This is not all the sheriff told him. After court convened and on the day set for trial, we find the defendant sitting in a corner with other criminals. When his case was called, we find the sheriff telling him, "before he entered a plea, . . it would be the best for him to go ahead and enter a plea." The defendant immediately entered his plea. Did he expect a benefit from his conversation with the sheriff? He made no admission or confession out of court. In a short time thereafter and before the maximum sentence was imposed, the trial judge inquired of the defendant if he had anything to say, and his reply was, "I don't know anything about it."

Of course, this record reveals that neither the trial judge nor the solicitor-general knew what prompted the defendant to enter his plea; they then thought that he was entering it from a sense of guilt. The sheriff no doubt in good faith thought that, under the circumstances as he knew them, the defendant would receive a light sentence and probably have the privilege of serving it on probation, and there can not, under this record, be imputed to the

court or any of its attachès any bad faith in the transaction. That is not the point. The question is, did the defendant enter the plea freely and voluntarily, without any hope of benefit? Under all the facts and circumstances of this case, we are constrained to hold that he did not, and that the distinguished judge abused his discretion in denying the motion to withdraw the plea of guilty. The mental and physical condition of the defendant as revealed by this record confirms us in the conviction that a reversal of this case is right and just, and demanded.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*