### BAUGHN, next friend, *v.* THE STATE.

1. There is no law of force in this State which makes it incumbent upon a judge of the superior court, at the time when judgment is to be entered or after it has been entered, to allow or order a judicial investigation concerning the mental condition of one against whom a lawful verdict of guilty has been rendered in a capital case and who has thereby become subject to the penalty of death; nor in either instance is a

refusal by such judge to enter upon an investigation of this kind, with or without the aid of a jury, a denial to the prisoner of "due process of law."

2. The provisions of the code relating to inquisitions in such matters are sufficiently comprehensive to cover all cases where the alleged insanity begins at any time after the rendition of the verdict of guilty.

Argued November 30, 1896.  Reargued January 29,—Decided March 12, 1897.

Petition. Before Judge Smith. Twiggs superior court. April term, 1896.

*Marion Harris* and *Glenn & Rountree*, for plaintiff in error. *J. M. Terrell, attorney-general,* and *Tom Eason, solicitor-general,* contra.

COBB, Justice.

At a special term of the superior court of Twiggs county in July, 1895, Elizabeth Nobles was tried for the offense of murder, and upon conviction was sentenced to death. The sentence "having been legally suspended and superseded by order of the court, the case came on to be heard before the court" on June 23, 1896, "for the purpose of passing sentence of death in accordance with the verdict of guilty rendered." At this term Baughn, the plaintiff in error, as the next friend of the condemned woman, appeared, and in her behalf objected to the sentence of death being passed, on the ground that she was then insane, and in his application prayed the court for a trial by jury of the said question of insanity; that the court cause jurors to be regularly summoned and impaneled to try said issue, and that such other proceedings be had in that regard as are usually incident to trials in said court; that petitioner have the right to the court's process to compel the attendance of witnesses, and to such other process as may be right and necessary; and that said sentence be postponed and superseded until the final adjudication of the question." The court declined to entertain the application and refused "each and every prayer" thereof, and fixed the time for the execution of the sentence

·on August 7, 1896. Thereupon Baughn, in the same capac-
ity as above stated, by petition alleged that Elizabeth Nobles
was then insane, and that it was contrary to the policy of the
law and illegal that the sentence of death should be exe-
·cuted; and prayed "that the court cause jurors to be regu·
larly summoned and impaneled to try said issue, and that
.such other proceedings be had in that regard as are usually
incident to trials in said court, and that petitioner have the
right to the court's process to compel the attendance of wit-
nesses, and such other process as may be right and necessary,
.and that said sentence of death be suspended and superseded
until the final adjudication of the question." The court re-
·fused to entertain the petition and denied "each and every
prayer" of the same. The error complained of is the refusal
·of the judge to entertain these petitions and grant the
prayers therein contained; it being claimed that the question
·of the insanity of the convicted woman should be inquired
·of by a jury in the superior court according to the forms of
procedure usually incident to trials in that court, that the
refusal of the judge to submit this question to a jury is a
·denial to the prisoner of the due process of law, and that
there is no proceeding authorized by any statute law of
·Georgia which amounts to due process of law in such cases,
the procedure provided in Penal Code, §1047, not being
judicial in its nature.

"A lunatic or person insane, without lucid intervals, shall
not be found guilty of any crime or misdemeanor with which
he may be charged: provided, the act so charged as criminal
was committed in the condition of such lunacy or insanity;
but if a lunatic has lucid intervals of understanding, he shall
answer for what he does in those intervals as if he had no
deficiency." Penal Code, §35. The section quoted clearly
shows that under the law of this State no person can be
legally convicted of a crime committed while in a moment
of irresponsibility growing out of an unsound mind. If the
person charged with the crime desires to avail himself of the

provisions of this law and urge his insanity as a defense to a crime for which he stands indicted, no special plea of any character is necessary, as this defense will be allowed under the plea of not guilty. *Danforth* v. *The State*, 75 *Ga.* 614.

"Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the asylum, there to remain until discharged in the manner prescribed by law." Penal Code, §951. This section secures to a person charged with a crime the right to have the question of his mental condition at the time of the trial inquired into before being required to plead to the indictment. *Long* v. *The State*, 38 *Ga.* 491.

"If, after any convict shall have been sentenced to the punishment of death, he shall become insane, the sheriff of the county, with the concurrence and assistance of the ordinary thereof, shall summon a jury of twelve men to inquire into such insanity. The following oath shall be administered to the jury, to wit: 'You, and each of you, do solemnly swear (or affirm) that you will well and truly try this issue of insanity between the State and A. B., now condemned to die, and a true verdict give according to the evidence. So help you God.' If it be found, by the inquisition of such jury, that the convict is insane, the sheriff shall suspend the execution of the sentence, and make report of the inquisition and suspension of the execution to the presiding judge of the circuit, who shall cause the same to be entered on the minutes of the superior court of the county where the conviction was had." Penal Code, §1047.

The sections above quoted embrace all of the law of force in this State which relate to the subject of an inquiry into the mental condition of a person charged with or convicted of a criminal offense. If insane at the time the act is committed, he shall not be convicted. The section first above

quoted gives him the right to have the question of his mental condition at this time inquired of strictly in accord with procedure usual in courts of justice in this State. Whether he be sane or insane at the time of the commission of the act, the section second above quoted provides for him a trial according to the usual rules of procedure in force in this State on the question of his mental condition at the time that he is placed on trial, and guarantees to him that he shall not be tried while he is in a condition of insanity. At every stage of the trial where an accused person could raise the question of his mental condition at common law before conviction, the law of force in this State gives the defendant the right to raise such question and accords to him an opportunity to have the question tried according to the procedure usual in the courts of the State.

The question made in this record is, can the prisoner after conviction, according to law, of a capital offense, demand a trial by a jury in the superior court on the question of his mental condition, in order that the insanity, if established, may operate to suspend the execution of the judgment in the case? The record shows that Elizabeth Nobles was convicted and sentenced to death in July, 1895, and that the sentence was not executed. She was called before the court in June, 1896, not for the purpose of being sentenced, because the sentence had been already imposed, but for the purpose of fixing a new time for the execution of the sentence. A person convicted of a capital offense is never sentenced under the law of this State but one time; the sentence is the conclusion of the record, and once entered, the record is complete. It may be that the time fixed in the sentence expires, but the sentence stands in full force. Therefore, the life of Elizabeth Nobles was absolutely forfeited by the verdict and the judgment or sentence which was rendered in July, 1895; and if execution ever takes place, it will be by virtue of this sentence, though at a different time than that orig-

inally named. What is commonly referred to as a resentence is only the fixing of a new time for the execution of a sentence. The language of the Penal Code, §1046, in reference to providing a time for the execution of the death sentence, seems to be conclusive of the question that one sentence is all that is ever imposed in a capital case, and that that sentence is to be executed, either at the time fixed therein or at such other time as the judge, or other lawful authority of this State, shall fix thereafter. "Whenever, for any reason, any convict sentenced to the punishment of death shall not have been executed pursuant to such sentence, and the same shall stand in full force, the presiding judge of the superior court where the conviction was had, on the application of the solicitor-general of the circuit, or other person prosecuting for the State, shall issue a habeas corpus to bring such convict before him; or if such convict be at large, said judge, or any judicial officer of this State, may issue a warrant for his apprehension; and upon the convict being brought before the judge, either by habeas corpus, or under such warrant, he shall proceed to inquire into the facts and circumstances of the case, and if no legal reason exists against the execution of the sentence, he shall sign and issue a warrant to the sheriff of the proper county, commanding him to do execution of such sentence at such time and place as shall be appointed therein, which the sheriff shall do accordingly; and the judge shall cause the proceedings to be entered on the minutes of the superior court of the county." In the case of *Harris v. The State*, 2 *Ga.* 290, where complaint was made that the prisoner was improperly sentenced under the provisions of the law contained in the section above quoted, the court say: "The sentence was suspended by the supersedeas consequent upon the first bill of exceptions, until the same was affirmed by this court by the dismissal of the case. It was then in full force. The court below, therefore, had the right, under the

code, upon habeas corpus to command the sheriff to do execution of the sentence." If we are correct in this interpretation, then, on June 23, 1896, when the prisoner was brought before the court for the purpose of being sentenced, she was already under sentence of death, the same having been pronounced in July, 1895; and therefore an application for an investigation into her mental condition could have been had according to the exact terms of the law as embodied in Penal Code, §1047, providing for such investigation, that is, she was a convict who had been sentenced to the punishment of death, and her presence before the court was simply for the purpose of fixing a time for the execution of such sentence. This being true, it is not necessary to decide what would be the right of a person who demanded an investigation into his mental condition in order to establish the fact that he became insane after verdict and before sentence. If it were necessary to decide this question, it could be with propriety held that the prisoner was not entitled to be heard upon this question between verdict and sentence, because there was no necessity for such hearing. Without sentence the verdict can never be carried into effect; the moment that sentence is pronounced, the right to apply for an investigation under section 1047 of the Penal Code is complete. We therefore treat this as the application of a person convicted and sentenced to have the question of her mental condition tried by a jury in the superior court according to the forms of procedure incident to investigations in that court. Has a convict the right, after verdict and sentence, and his life according to "due process of law" thus forfeited to the State, to demand as "due process of law," that his mental condition shall be inquired into, in order to determine whether the judgment of the court shall go into execution? "Inasmuch as the stage of criminal procedure known as pleading has been passed at the time when, after conviction, the issue as to insanity in bar of sentence is asked for, the point as to a constitutional

right may not be involved." Carr's Trial of Lunatics, 87.
In the case of Laros v. Commonwealth, 84 Penn. St.
pp. 200, 210, the court say: "The last three assignments of
error raise a single question upon the power of the court to
inquire by inspection and per testes into the insanity of the
prisoner since verdict.   We have no precedents in this
State, known to us, how the inquiry shall be conducted
when such a plea in bar of sentence is put in.   It seems to
us, however, that no right of trial by jury is involved in the
question   A jury having found a verdict against the plea
of insanity when set up as a defense to conviction, subse-
quent insanity cannot be set up in disproof of conviction.
The plea at this stage is only an appeal to the humanity of
the court to postpone the punishment until a recovery takes
place, or as a merciful dispensation.   The rights of the
prisoner as an offender on trial for an offence are not in-
volved.   He has had the benefit of a jury trial, and it is now
the court only which must be satisfied on the score of human-
ity.   If the right of trial by jury exists at all, it must exist
at all times, no matter how often the plea is repeated alleg-
ing insanity occurring since the last verdict. Such a right is
inconsistent with the due administration of justice.   There
must be a sound discretion to be exercised by the court.
If a case of real doubt arise, a just judge will not fail to re-
lieve his own conscience by submitting the fact to a jury."

It is in the power of any person interested in the prisoner
to call for an investigation under Penal Code, §1047, or
the judge himself may order the investigation.   The pur-
pose of the legislature evidently was to carry out the prin-
ciple referred to in the decision above quoted, and provide a
method for the trial of a question which simply involved
a plea to the humanity of the court to postpone the punish-
ment of an insane person until a recovery takes place.   In
the case of Jones v. The State, 13 Ala. 153, the court, in
dealing with the question of insanity at the time of trial,
say: "Although we are of opinion that the facts disclosed in

the bill of exceptions might well have warranted the pre-
liminary inquiry as to the prisoner's mental condition, yet
this must be left to the sound discretion of the court. If,
amid the mystery and veil which surrounds the phenomena
of mental aberration, so difficult to penetrate, the judge
should be mistaken and try an insane man (as we think has
been done in the case before us), it will present a case in
which there may be a strong appeal to executive clemency."
In the case of *Spann* v. *The State*, 47 *Ga.* 551, in referring
to the law now contained in Penal Code, §1047, Judge
McCay says: "The stay for insanity seems to depend on
the discretion of the judge at common law. 1 Hale, 370.
He may call in a jury if he pleases. The whole proceeding is
merely a stay of execution, and is based rather upon the
public will, and a sense of propriety, than on any right in
the prisoner.  .  .  The whole proceeding is rather an
inquiry based on public propriety and decency than a mat-
ter of right." While the question as to whether the section
under consideration was due process of law was not involved
directly in the case of *Carr* v. *The State*, 98 *Ga.* 91, still, in
passing upon the right of the superior court to review a pro-
ceeding under that section by certiorari, the majority of the
court recognized the proceeding as being "rather an inquiry
based on public propriety and decency, than upon any right
of the defendant." The effect of that decision was to hold
that no judicial investigation was required to be given to
a person as a matter of right, and that all investigations
after conviction were simply to inform the court imposing
sentence as to the mental condition of the prisoner, for the
sole purpose of determining whether it would be consistent
with public decency and propriety to take away the life of
a person who had not mind enough to realize what was
being done.

There being no law of force in this State which author-
izes or requires the judge of the superior court to enter into
an investigation of the mental condition of Elizabeth

Nobles at the time and in the manner prayed for in the petition filed in her behalf, the refusal by the judge to enter into such investigation was not a denial to her of "due pro-·cess of law;" and there was, therefore, no error in declining to entertain such petition and in denying "each and every prayer" therein.

*Judgment affirmed. All the Justices concurring.*