### GORE *v.* HUMPHRIES, Judge.

When the day fixed by the trial court for the execution of a capital sentence has passed, and the sentence for any reason whatever has not been executed, it is the duty of the judge of the superior court in which the sentence of death was imposed, either in term or in vacation by an order as prescribed by law (Ga. L. 1924, p. 195), to name and fix a new date for the execution of said capital sentence, which shall be not less than ten days nor more than twenty days from the date of said order.

No. 5638. NOVEMBER 9, 1926.

Original application for mandamus. See 162 *Ga.* 653.

Gore was convicted in the superior court of Fulton County for the offense of murder, and was sentenced to be executed in the manner prescribed by the act of 1924 (Ga. L. 1924, p. 195). His conviction was reviewed by this court upon a bill of exceptions, and affirmed. *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36). On July 16, 1926, the Governor granted a reprieve for sixty days, extending to and including September 14, 1926. In pursuance of direction contained in the order granting a reprieve the superintendent of the penitentiary prepared to execute the convict on September 14. On September 13 attorneys for Gore presented to Hon. John D. Humphries, judge of the superior court of Fulton County, a petition setting forth that the superintendent was pro-

---

Criminal Law, 16 C. J. p. 1331, n. 13.

ceeding to execute the sentence upon Gore in pursuance of the date fixed in the executive order granting the reprieve, but that the date originally set for the execution (July 16) had passed, and no new order had been granted by the court in which Gore was convicted, or by the judge of that court, setting the execution for any other time. The petition prayed that an injunction be granted, restraining the superintendent from executing sentence on September 14, and that a new date be fixed for the execution by the judge of the superior court in accordance with law. It was further alleged in the petition that the warrant authorizing and directing the officer to execute sentence of death bore date only three days prior to the purposed execution, and that the certified copy of the sentence containing the only date which had ever been fixed by the court for the execution ordered the officer to do execution on July 16, 1926, a day which had already passed. Upon this petition the court, after stating the facts substantially as recited above, denied the prayer for injunction, holding that "the prayer of the petition is that the execution of the sentence be enjoined upon the idea that under section 7 of the act of 1924, approved August 16, 1924 (Acts 1924, p. 195), it is necessary that the prisoner should have been resentenced by the court after the respite of the Governor. Such course has never been necessary, and the court is of the opinion that section 7 of the act referred to is applicable only when the date of execution as fixed by the Governor in such circumstances has passed without execution."

The order of the Governor granting the reprieve to which the court had reference is "that the respite shall end on September 14, 1926, and the prison authorities are hereby directed to finally execute the order of the court on the said September 14, 1926, unless otherwise directed by proper order in the meantime." This order bore date of July 10, 1926. On September 4, 1926, the following order was passed by the Governor: "In Re M. M. Gore —Murder—Fulton Superior Court. By the Governor: Having had this application under consideration, and no legal cause being shown for interference with the verdict of the jury and judgment of the court, it is ordered that the application for clemency be and the same is hereby denied." A certified copy of this order was received by B. H. Dunaway, superintendent of the Georgia

State Prison Farm, on September 5, 1926. To the order of the judge of the superior court quoted above Gore presented his bill of exceptions assigning error "upon the ground that the refusal of said judge to enjoin the electrocution of your petitioner is contrary to law, in that said B. H. Dunaway has no order issued by any person with legal authority to electrocute plaintiff in error on the 14th of September, 1926, and his ·acts in electrocuting plaintiff in error on said date will be without authority of law and contrary to law." The judge declined to certify the bill of exceptions, "for the reasons set forth in my order declining an injunction, a copy of which is attached together with copies of the orders of the Governor. The defendant has had one appeal to the Supreme Court, and there is no merit, in my opinion, in the tendered bill of exceptions." Thereupon Gore presented to this court an application for mandamus requiring the judge of the lower court to certify the bill of exceptions.

*Reuben A. Garland,* for the applicant.

*John A. Boykin, solicitor-general,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) This case involves the proper construction of the act of 1924 (Ga. L. 1924, p. 195), which has not heretofore been before this court. The exact question in the case at bar is whether, when the date for the execution of one convicted of a capital offense has passed by reason of the grant of a reprieve by the Governor, the date of the final enforcement of the sentence shall be fixed by the court in which the accused was tried and convicted or by the executive order issued by the Governor. In most jurisdictions in this country, if nothing more than a reprieve be granted by the Governor, the reprieve operates of itself to fix the date of the execution upon the day when the reprieve expires. However, in many States the distinct and absolute independent duties of the three departments of government, legislative, executive, and judicial, are not so clearly defined and definitely fixed as in Georgia. Art. 1, sec. 1, par. 23, of the constitution of Georgia declares: "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." It is of the utmost importance that this provision of our constitution should not be overlooked in the con-

sideration of a question so important as that now before us. This court held, in the case of *Neal* v. *State,* 104 *Ga.* 509 (30 S. E. 858, 42 L. R. A. 190, 69 Am. St. R. 175), that judges of the superior court could not suspend sentences, placing the ruling solely upon the provision of the constitution which grants to the Governor the exclusive power of granting reprieves. The reasoning of Mr. Justice Fish in that case is entirely applicable to the case now before us. If, as properly held by this court in the *Neal* case, supra, the courts can not suspend their own sentences, because the exercise of this right would conflict with the constitutional right of the Governor to reprieve, then it would seem that the power of the Governor to reprieve should not be permitted to conflict with the constitutional right of the courts to control the execution of their judgments and sentences in criminal cases. Evidently this was the view of the General Assembly in the passage of the act of 1924, supra; and if that statute is a valid enactment, it would seem that the terms of the law·fix a different rule for Georgia from that which obtains in other jurisdictions. There seems to be no ambiguity either in the caption or in the general provisions of the act of 1924. The caption is as follows: "An act to provide for the execution of persons sentenced to the punishment of death, by electrocution; and to provide a permanent death chamber and appliances and apparatus necessary for the proper execution of felons by electrocution; and to appropriate monies necessary to defray the expenses thereof; and authorize the *trial judge to fix a new date for the execution of the sentence* where the same is not executed on the date originally named; and for other purposes." The subject-matter of the act as set forth in the caption seems to embody and includes four purposes: First, a change in the method of inflicting capital punishment from hanging to electrocution. Second, a provision for a death chamber and necessary appliances for electrocuting the prisoner. Third, appropriation of necessary funds to defray the expense. Fourth, provision for the fixing of a new date for the execution of the sentence where execution has not occurred on the date originally fixed, which the caption of the act declares should be designated by "the trial judge."

Section 7 of the act is the only section which refers to the fourth purpose of the statute. It is as follows: "Be it further

enacted by the authority aforesaid, that where the date for the execution of any such convict in a capital case has passed by reason of a supersedeas incident to the suing out of a bill of exceptions to the judgment of the trial court, or a respite by the Governor, or for any other reason, the judge of the superior court of the county where the case was tried shall have power and authority, without requiring the convict to be brought before him by habeas corpus, as provided in Penal Code (1910), par. 1072, to pass an order in term time or vacation, fixing a new date for the execution of the original sentence, said order to be recorded on the minutes of said court as other official orders and sentences are required by law to be done, and a certified copy of said order shall be sent immediately to the superintendent of the State Penitentiary at the place of execution. *The judge* shall fix a new date not less than 10 nor more than 20 days from the date of such order. Providing this bill shall not affect any person now under indictment for murder." It will be noted that delay caused "by a respite by the Governor" is included in the same class as the supersedeas incident to the suing out of a bill of exceptions as being ejusdem generis therewith. This of itself would seem to answer the contention that the final date of execution could in any event be fixed by the respite; but to show still more clearly the purpose of the General Assembly to include all possible cases and thereby include all cases where the original date fixed for the execution of a convict in a capital case has passed, the words "for any other reason" are inserted. Construing the statute, the time-worn rule should not be overlooked. We should consider the old law, the new, and the remedy sought to be applied. The act of 1924 was to change the old method of execution by hanging to electrocution, and the first portion of the act dealt with that subject and provided means for giving effect to the change. But there was another condition affecting the execution of sentence in capital cases, aside from the manner in which the death penalty was inflicted, of which no doubt the General Assembly was cognizant. Shortly before the assembling of the General Assembly in 1924 this court had before it the case of *Mallory* v. *Chapman*, 158 *Ga.* 228 (122 S. E. 884, 34 A. L. R. 310). In this case the contention was made that the execution of a sentence imposed upon a convict on October 24, 1923, had been deferred by a respite by the

Governor until February 19, 1924, "which respite by its terms expired that date," and that by reason of the fact that sentence was not executed on that day the sentence was void; and the petitioner "prayed that he be discharged from restraint of his liberty." He was not executed, because of oral direction by the trial judge to the sheriff by telephone. On February 21, 1924, Mallory was brought before the trial judge, and an order was passed that the sentence be executed on March 13, 1924; but subsequently, on hearing upon habeas corpus, "the judge passed an order adjudging the order of February 21, 1924, to be void, and revoked the same, and further ordered that the sentence of the court pronounced at the April and October terms, 1923, of Houston superior court was of full force." He remanded the petitioner to the custody of the sheriff, to be kept "until his execution on a date to be fixed by the court."

Upon authority of *Baughn* v. *State,* 100 *Ga.* 554 (28 S. E. 68, 38 L. R. A. 577), this court held: "One sentence is all that is ever imposed in a capital case. Such sentence is to be executed at the time fixed therein, or at such other time as the judge shall fix thereafter." Section 1072 of the Penal Code (1910) was also quoted in overruling the contention that the failure of the sheriff to execute the defendant on the day fixed did not have the effect of rendering the original sentence void. According to the terms of section 1072, and as pointed out in *Baughn's* case, supra, *it is the duty of the judge* to fix dates of execution of capital sentences; and "whenever, for any reason, any convict sentenced to the punishment of death shall not have been executed pursuant to such sentence, and the same shall stand in full force, the presiding judge of the superior court where the conviction was had, on the application of the solicitor-general of the circuit, or other person prosecuting for the State, shall issue a habeas corpus to bring such convict before him; . . . and upon the convict being brought before the judge, . . . he shall proceed to inquire into the facts and circumstances of the case; and if no legal reason exists against the execution of the sentence, he shall sign and issue a warrant to the sheriff of the proper county, commanding him to do execution of such sentence at such *time and place* as shall be appointed therein, which the sheriff shall do accordingly." This decision brought to the attention of the General Assembly

certain defects in procedure which it sought to remedy. This court had held in *Cogswell* v. *Schley,* 50 *Ga.* 481, and *Wiggins* v. *Tyson,* 114 *Ga.* .64 (39 S. E. 865), that the trial judge could fix a new date for execution in vacation as well as in term time, and the provision for the issuance of a writ of habeas corpus for the purpose of having the judge "inquire into the facts and circumstances of the case" had been found to be in effect a useless formality. That there might be conflict between the executive and judicial departments which would tend to further complicate matters was also apparent from the facts in the *Mallory* case, supra; and hence the purpose in the passage of section 7 of the act of 1924 was to pass a general provision that would cover all cases of delayed executions, no matter what might be the occasion of the delay. The express delegation to the trial court of the exclusive power to fix the date for the execution of one convicted of a capital offense, where a previous sentence for any reason had not been executed, manifestly excludes the exercise of such a power on the part of any other officer of this State. Expressio unius est exclusio alterius. Section 7 expressly declares that if the day for the execution has passed by reason of a respite by the Governor, the judge of the superior court of the county where the case was tried shall have power and authority, without requiring the convict to be brought before him by habeas corpus, to fix a new date in vacation for the execution of the original sentence. It must be recorded on the minutes of said court as sentences are required to be done, and a certified copy of this order shall be sent immediately to the superintendent of the State Penitentiary. There is another important provision which could not apply were the date of the execution to be fixed by the expiration of the respite. Section 7 requires that the judge shall fix a new date of execution, not less than ten days from the day of the order. In the case now before us the order is dated only three days prior to that fixed for the execution. It seems to us to be manifest that it was the intention of the legislature that where the date fixed for the execution of a convict had passed for any reason, no matter what, he should be allowed a reasonable time in which to prepare for his departure from all earthly scenes. In some instances it may seem a trifling privilege, but it is an undoubted legal right

under the provisions of this act, which is accorded one who must die as the penalty of his misdeed.

It is of course well settled that as a general rule injunction will not lie to restrain criminal proceedings. However, this court has frequently held that injunction will lie to restrain the enforcement of a criminal law where the destruction of property rights is involved. *Brown* v. *Thomasville,* 156 *Ga.* 260 (118 S. E. 854), and cit. Far more valuable than any other property right, it seems to us, would be the right accorded by law, even though for only a brief period, of prolongation of the life without which there could be no possession of any property. But we are not compelled to decide that the right to possess life is a property right; for the decision of the lower court was not based upon the proposition that injunction was not the appropriate remedy to induce a stay of execution. The learned trial judge proceeded, as we do, upon the theory that mere denomination or nomenclature applied to pleadings do not determine their nature or quality. It has often been decided by this court that the nature, not only of civil pleadings, but also of indictments, was to be determined by the contents of the pleading and the nature of the relief prayed, and not by the descriptive term used to designate the relief actually sought. In other words, the description of a legal proceeding is ascertained from its averments rather than from the name applied to the proceeding. In the case at bar this court permitted counsel for plaintiff in error to amend the present bill of exceptions by attaching thereto the entire record of the proceedings which were before the lower court; and though there appears in the record a prayer for injunction, treating the proceedings which were before the court as a whole, the application of the defendant can properly be construed to be a petition to stay the illegal execution of the sentence which the superintendent was about to enforce, for the reasons stated in the petition, upon the ground that the petitioner was about to be unlawfully deprived of his life. Be that as it may, and regardless of the fact that injunction was prayed, the allegations of the petition, whatever may be the legal phrase by which it should be denominated, entitled the petitioner to relief, and such circumstances are provided for under our law which requires that in such a case it is the duty of the superior court to so mould its judgment in accord-

ance with the facts as to afford appropriate relief. Civil Code (1910), § 5426. The court had inherent power to amend its process and orders and make them conform to justice. § 4644, par. 6. The provisions of section 7 of the act of 1924 are so plain that we do not think a different conclusion can be reached except upon the ground that the act of 1924 is unconstitutional in that only the Governor can stay the execution of a sentence in a case where such sentence has been suspended by the Governor in the exercise of his right to suspend the sentence by reprieve. We can not agree to this contention. Art. 5, sec. 1, par. 12, of the constitution (Civil Code, § 6481) provides: "He [the Governor] shall have power to grant reprieves and pardons, to commute penalties, remove disabilities imposed by law, and to remit any part of a sentence for offenses against the State, after conviction, except in cases of treason and impeachment. . ." As to the Governor's power to grant reprieves and pardons, there is no restriction or limitation imposed upon the exercise of the executive discretion as he alone may see fit to exercise it. However, the constitution does not undertake to define what is meant by a reprieve; and since the legislative department is unhampered in its independent action in passing laws, it is clearly within the constitutional power of the General Assembly to say whether, within the term "reprieve," the Governor is authorized to fix the date of execution of a sentence imposing death, or not so authorized. Properly construed, a reprieve by the executive is nothing but a temporary suspension for the period named in the respite of the execution of the sentence imposed by the court. That the Governor has the right to thus suspend the sentence, not only once but as often as he may think proper in the exercise of his authority, can not be questioned, and the sentence as originally pronounced by the court is entirely unaffected by the reprieve. However, the legislature saw that in a case where the reprieve extended for a period of time beyond the day named in the sentence for the execution there would be occasion for a new date of execution to be fixed; and thereupon the act of 1924 provided that the judge of the court in which sentence was originally pronounced should appoint a named day for the execution of the sentence. In accordance with the same humane spirit which has always forbidden the execution of one condemned to death within a shorter period of

time than 20 days (Penal Code, § 1070), the discretion of the court as to the selection of a date upon which the execution should take place was confined within a definite period, not less than ten nor more than twenty days from the date of the order appointing a new day for the execution. So we think that the learned trial judge, upon the petition as presented, erred in not staying the execution and passing a proper order in accordance with the act of 1924, fixing a new date for the execution of the convict. For the same reason the bill of exceptions should have been certified, instead of being declined on the ground that "there is no merit  .  .  in the tendered bill of exceptions." It is therefore ordered that the mandamus be made absolute. But, in the exercise of the power conferred by section 6103 of the Civil Code (1910), the requirement to certify the bill of exceptions may be avoided, as well as liability for costs, if the trial judge shall fix a new date for the execution as prescribed by the terms of section 7 of the act of 1924 (Ga. L. 1924, p. 195).

<em>So ordered. Beck, P. J., and Gilbert, J., dissent.</em>

GILBERT, J., dissenting. Gore's petition to this court recited that he had petitioned a judge of Fulton superior court for an injunction, that said judge had refused the same, and that he had tendered a bill of exceptions to the order refusing said injunction. It further recited that unless a mandamus issued requiring said judge to sign an order enjoining petitioner's electrocution, he would be denied due process. The substance of the petition for injunction, which was attached to and made a part of the petition here for mandamus, was, that petitioner was tried for murder, convicted, and sentenced to be electrocuted; that execution of the sentence was stayed by a supersedeas pursuant to a motion for new trial, upon the denial of which petitioner was resentenced to be electrocuted on July 16, 1926; that execution of this sentence was "stayed" by an order of the Governor issued on July 10, 1926; that on September 11, 1926, petitioner was transferred to the State Prison at Milledgeville, for the purpose of being electrocuted under the order of the superior court directing that petitioner be electrocuted on July 16, 1926; that the warden of the State Prison received the sentence to electrocute on July 16, on September 11, but that he had received no subsequent order or sentence, though he had declared his intention

to electrocute petitioner on September 14, and would so do unless enjoined by the superior court. The prayer for injunction reads: "Wherefore, your petitioner prays that said B. H. Dunaway, warden of the State Prison of Georgia, be enjoined and restrained from putting your petitioner to death by electrocution on the 14th day of September, 1926, or until he is legally authorized by this court so to do."

There are several reasons why I can not concur in the ruling of the majority "that the mandamus be made absolute." If the trial judge complies with this order rather than avail himself of the opportunity to avoid obeying the rule, what will be the result? He will, of course, sign and certify the bill of exceptions. That leads us to inquire whether any assignment of error is contained in the bill of exceptions. By reference to that document it will be found that there is but one complaint, and that is that the trial judge refused "to grant a restraining order and injunction as prayed for." By reference to the petition addressed to the trial judge it will be found that there is only one prayer, to wit, that the warden be enjoined and restrained from putting into execution the sentence of the court passed previously. Should, therefore, the trial judge sign and certify the bill of exceptions, this court will have before it a case involving only one question, and that is whether the trial judge should, for the reasons assigned in the petition, have granted the injunction. It was alleged that the warden had declared his intention of carrying out the sentence of electrocution on September 14, 1926. That date is passed, and to require the trial court at this time to grant the injunction will avail nothing. "Equity will not do a vain and foolish thing," and for that reason the trial judge should not be required to sign and certify the bill of exceptions.

There is another reason why I do not concur. Should the bill of exceptions be signed, it will bring to this court a case wherein injunction had been refused (now moot), the argument of petitioner being that the trial judge misconstrued the statute of 1924. The details are fully set out by the majority. It will be observed, by reference to the majority opinion, that question is in this proceeding fully decided; and therefore, should the case come before us, it would present nothing for decision.

There is still another reason why I do not concur, which is

fundamental. The ruling of the majority clearly violates the well-settled rule against interference by courts of equity with criminal prosecutions. A court of equity "will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain nor obstruct them." Civil Code (1910), § 5491. In *Gault* v. *Wallis,* 53 *Ga.* at page 677, this court said: "This was a proceeding under the criminal law of the State, and we know of no principle of equity jurisprudence which confers upon a court of equity jurisdiction to interfere with the administration of the criminal laws of the State by injunction or otherwise. For a court of equity to assume jurisdiction in criminal cases, and enjoin the judgments of the courts, would be a novel and dangerous precedent to establish." In *Phillips* v. *Stone Mountain,* 61 *Ga.* 386, Justice Bleckley said: "No injunction, or order in the nature of injunction, will be granted to restrain proceedings in a criminal matter." In *Garrison* v. *Atlanta,* 68 *Ga.* 64, this court ruled: "Injunction will not be granted to restrain a criminal proceeding."

In *Paulk* v. *Sycamore,* 104 *Ga.* 24 (30 S. E. 417, 41 L. R. A. 772, 69 Am. St. R. 128), the above principle was applied, and in the opinion it was said: "The principle upon which these decisions are founded has long been well settled by a great current of authority, both in this country and in England. In Re Sawyer, 124 U. S. 200, it was reaffirmed by the Supreme Court of the United States in the most emphatic terms. The first headnote in that case is: 'A court of equity has no jurisdiction of a bill to stay criminal proceedings.' And in the opinion of the court it is said: 'The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of the rights of property. It has no jurisdiction over the prosecution, punishment, or pardon of crimes or misdemeanors, or over the appointment or removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of courts of common law, or of the executive and administrative department of the government.' Further on, in the same opinion, after stating that 'The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a

suit already pending before it, and to try some right that is in issue there,' and that 'Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine,' it is said: 'And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the State, or under municipal ordinances.' Citing 'West v. Mayor &c. of New York, 10 Paige, 539; Davis v. American Society for Prevention of Cruelty to Animals, 75 N. Y. 362; Tyler v. Hamersley, 44 Conn. 419, 422 [26 Am. R. 479]; Stuart v. Board of Supervisors, 83 Ill. 341 [25 Am. R. 397]; Devron v. First Municipality, 4 La. Ann. 11; Levy v. Shreveport, 27 La. Ann. 620; Moses v. Mayor &c. of Mobile, 52 Ala. 198; . . Cohen v. Goldsboro Commissioners, 77 N. C. 2; Waters Pierce Oil Co. v. Little Rock, 39 Ark. 412; Spink v. Francis, 19 Fed. Rep. 670, and 20 Fed. Rep. 567; Suss v. Noble, 31 Fed. Rep. 855.'" See also *Hughes* v. *State Board of Medical Examiners,* 158 *Ga.* 602 (123 S. E. 879), and cit.

Finally, I do not think that the majority have properly construed the act of 1924. I think the proper construction of the act is that when the date named in the sentence, or the date to which the electrocution has been postponed by a respite, or otherwise has passed, so that there is no day designated for such execution, the judge shall pass an order fixing a new date. When the Governor respited the convict sixty days, that fixed a day sixty days from the date already named.

BECK, P. J. I concur in the dissent of Mr. Justice Gilbert, for the reasons stated therein, and upon the grounds stated in my dissent from the granting of a mandamus nisi when the application for mandamus was first heard.