## MITCHELL v. THE STATE.

No. 7707.   MAY 16, 1930.

*Charles W. Worrill,* for plaintiff in error.

*George M. Napier, attorney-general, B. T. Castellow, solicitor-general, T. R. Gress, assistant attorney-general,* and *Bond Almand,* contra.

GILBERT, J.   Will Mitchell was indicted and convicted of the offense of murder.   His motion for a new trial consisted of the general grounds and an amendment thereto.   The amendment assigns five reasons why the new trial should be granted, all of them being elaborations of the general grounds, as follows:   (1) because the verdict was not only against the evidence, but decidedly against the charge of the court; (2) because under the evidence and the law murder was not involved, because no motive nor malice was shown; (3) because the conviction rests upon circumstantial evidence, and the proved facts did not consist with guilt nor exclude every other reasonable hypothesis; (4) because under the rule of conflicting theories one being consistent with innocence and the other with guilt, the jury was bound to accept that consistent with innocence and acquit the defendant; (5) because the defendant was convicted on mere conjecture and bare suspicion, when the jury should have given him the benefit of reasonable doubt and acquitted him.   The exception is to the judgment refusing a new trial.

The jury were authorized to find the following:   Steve Moreland came to his death as a result of a gunshot wound.   He was found by

the roadside 119 yards from the home of the defendant, Will Mitchell, the first person reaching him after the shot was fired being Hassie Hudson. She did not live "very far from Will Mitchell." She had been to Mitchell's house that night, looking at a sewing machine with the view of buying it. She did not see Steve Moreland before he was shot. She left Mitchell's house going to her home, and as she was going in her gate heard a gunshot. It seemed to come from "down the road." She went back in the direction of the gunshot, and saw Moreland in the road lying on his face. He had been shot. Moreland died at that place. He asked "Is that you, Hassie?" The witness replying "Yes," Moreland said, "Will Mitchell shot me." Hassie Hudson went for help, and James Jackson returned with her to the point where Moreland lay in the road. Moreland said, "I can't live long at this." Moreland told Hassie and Jackson that he was going to die, and died immediately. At the place where Moreland was found lying on the ground wounded, pieces of a broken pipe were found. The pipe-stem and several pieces of the pipe were picked up and were introduced in evidence. The pipe-stem was sticking in his overall pocket. "One piece of this pipe was sticking in his flesh where he was shot." The other pieces of the pipe were "on the ground under him where his body was lying." When at Jackson's house Hassie saw Will Mitchell. He told her that if she did not tell that Steve Moreland got killed at his house he would kill her. That was before Moreland died.

The defendant made a statement in which he said, in substance, that Hassie Hudson, on the night of the killing, came to his house and brought him some chicken; that they sat there together for awhile, and some one knocked on the door and called Hassie, and Hassie said, "That is Steve," and told the defendant to tell Steve that she was not in there; that he did tell the deceased that Hassie was not in there, and thought he would go away; that the deceased persisted, over defendant's remonstrance, on coming into the house, and pushed the door open, and as he did so the defendant shot him to prevent him from entering the house, and because he was "just scared of him," and the deceased "wheeled around and ran;" and that the woman left and ran out behind Moreland. The defendant also denied having told Hassie Hudson that he would kill her if she did not say the man was shot in his house. The defendant

concluded his statement by saying: "This woman was the cause of it, and I would not have hurt him for nothing if he had not burst the door and scared me when he came in."

One State witness testified that he had examined the premises of the defendant on the night of the killing, in order to ascertain if there was any evidence of bloodshed or struggle at the house, and what tracks were leading to and from the house. He testified that he saw no evidence of a struggle or of blood stains near or about the house, and only the tracks of one person; that there had been a light rain just before and just after the shooting. This witness testified that the latch was broken off the door and was found lying on the floor. From this the witness reasoned that the door had been broken.

The verdict of guilty was not dependent wholly upon circumstantial evidence. *Tolliver* v. *State,* 138 *Ga.* 138 (74 S. E. 1000). It is a case of direct evidence. The dying declaration of the deceased was to the effect that the defendant, Will Mitchell, shot him. There is no exception to the introduction of this evidence and no complaint of the charge of the court on the subject. Moreover, the defendant in his statement admitted that he shot the deceased. It is true that he attempted to justify the shooting by the further statement that the deceased broke into his house, and that he shot because he was "scared" of the deceased. According to the statement the shooting was done at the home of the defendant, but there were other facts which authorized the jury to find that the shooting occurred by the side of the road 119 yards from the home of the accused, where the deceased was found wounded and where he died, the broken pieces of his pipe found on the ground tending to show that the shooting took place there. The jury had a right to believe any part of the defendant's statement and to reject any part. They were authorized to believe that part of the statement which admitted the shooting, and to reject the explanation given by the accused. They were authorized to find that Moreland did not break into the house of accused, or that, if he did, he had desisted and gone away. All of these issues were submitted to the jury under the charge of the court. Under the facts made out by the State's evidence the jury was authorized to find the defendant guilty of murder. Accordingly the judge did not err in overruling the motion for a new trial.

*Judgment affirmed.* *All the Justices concur, except Russell,*
*C. J., who dissents.*