## FOWLER *v.* GRIMES, sheriff.

No. 14859. June 12, 1944. Rehearing denied July 11, 1944.

*James R. Venable, Paul Crutchfield,* and *J. L. Barwick,* for plaintiff.

*John A. Boykin, H. G. Vandiviere,* solicitors-general, *E. A. Stephens,* and *John S. Wood,* for defendant.

Bell, Chief Justice.  Walter Fowler filed an application for the writ of habeas corpus against J. M. Mount as sheriff of Fulton County.  The case as made by his amended application and the response was tried before Honorable Hugh M. Dorsey, one of the judges of Fulton superior court, who, after hearing evidence from both sides, denied the writ and remanded the applicant to custody. To this judgment the applicant excepted.  After the case reached this court, the death of J. M. Mount, the defendant in error, was suggested, and T. R. Grimes, his successor as sheriff, was by consent made defendant in error.

Fowler was tried in the superior court of Forsyth County for the offense of murder, alleged to have been committed in that county in February, 1943.  The trial began on May 5, 1943, and ended on May 6, by a verdict of guilty without recommendation, whereupon he was sentenced to be electrocuted.  He filed a motion for a new trial, which after amendment was overruled, and this judgment was reviewed and affirmed in *Fowler* v. *State,* 196 *Ga.* 748 (27 S. E. 2d, 557).  In his application for the writ of habeas corpus as thereafter filed and amended, he contended that the verdict of guilty, the original death sentence based thereon, and the subsequent order resentencing him, or fixing a new date of execution after the original date had passed, were void for various reasons alleged.  The contentions so made will be more fully stated in the opinion.

■ At the time of his trial in Forsyth County, Fowler was serving a sentence in the Federal penitentiary in Atlanta. He was brought to Forsyth County by a United States deputy marshal, for the purpose of trial, under a *habeas corpus ad prosequendum*. He contends that because he was kept in the personal custody of the deputy marshal throughout the trial, he was deprived of the right to communicate privately and confidentially with his attorneys, as he was entitled to do, under the Federal and State constitutions and the statute law of Georgia. Code, §§ 1-815, 2-102, 2-103, 2-8505, 38-418, 38-419.

It appears that about a month before the trial, the judge appointed Honorable H. E. Kirby, an attorney of Cumming, in Forsyth County, and Honorable Howell Brooke, an attorney of Canton, in the adjoining county of Cherokee, to represent the accused, and they did represent him throughout the trial. They also filed a motion for a new trial, which they later amended, and on denial of the motion brought the case to the Supreme Court. There is no contention that these attorneys were not able, faithful, and diligent; the sole contention as to this phase of the case being that both they and the accused were denied the right of private communication because of the constant presence of the deputy marshal, who had and continued to have the accused in custody.

The applicant testified that on April 22, 1943, he was carried by a deputy marshal to Cumming, Georgia, where he was met by his counsel, Mr. Brooke and Mr. Kirby, in the presence of the deputy marshal; that at this time his trial was postponed until May; that he talked with these attorneys only one time during the trial, and that they requested the court to allow them to have a private conference with him, which was refused. He also testified that Mr. Kirby came to see him one time in the Federal penitentiary, and talked with him there in the presence of an officer; that Mr. Brooke did not talk to him in the Fulton tower—"I mean to say Mr. Brooke never talked to me in the Fulton tower." He testified that he considered Mr. Brooke his leading counsel, and the record contains nothing to indicate that both of these attorneys were not friendly to him at the time of the habeas-corpus trial, although they did not then appear as his counsel. Each attorney made an affidavit, which appears in the present record. In neither affidavit is there any statement that the court refused to allow private com-

munication between them and the accused. The only statement in the entire record to this effect is the testimony of the applicant himself, which was directly contradicted in a material respect by the affidavit of Mr. Brooke, as to a conference in the Fulton tower. Mr. Brooke testified that between April 17 and April 22, 1943, he and Mr. Kirby conferred with the accused in the consultation room of the Fulton tower in Atlanta, "only in the presence of Walter Fowler's father, mother, and sister." He concluded his affidavit with the following statement: "Affiant assumes that he could have conferred with Walter Fowler, if necessary, privately at different times in the Fulton (tower) county jail, but as he recalls he only had one private conference with him. During all the trial, counsel conferred with the defendant, Walter Fowler, at any time he desired, but the United States deputy marshal was in the room where the conversation was being had, but the marshal apparently was not undertaking to pay any particular attention to the matters discussed, but was always in hearing distance."

The respondent also introduced in evidence an affidavit of the Honorable J. H. Hawkins, the trial judge, which read in part as follows: "Affiant further says that the indictment against the said Walter Fowler was returned by the grand jury of Forsyth County at the March term, 1943, of said court, and that thereafter, on the 3d day of April, 1943, affiant appointed as counsel to represent the said defendant Walter Fowler, R. E. Kirby, Esq., an attorney of Cumming, Forsyth County, Georgia, and Howell Brooke, Esq., an attorney of the adjoining county of Cherokee, both of whom are members of the bar of the State of Georgia of many years standing, and of experience and ability; that the said defendant was brought into Forsyth superior court by a United States marshal under a writ of habeas corpus on April 17, 1943, he having previous to that time been in the custody of Federal authorities at Louisville, Kentucky, and at which time the defendant's said counsel were present and conferred with the defendant, and the said case was set for trial for April 22d, 1943. On the said 22d day of April, 1943, the said counsel for the defendant were present in Forsyth superior court and moved to continue the said case because of the illness of the said defendant, Walter Fowler, who was then confined in the Fulton county jail under the direction of the United States marshal; that on said motion, the trial of the case

was ·continued to May 5th, 1943, and that on April 17th, and from that date to May 5th, counsel for the defendant had an·opportunity to confer with and did confer with the said defendant with reference to the preparation of his case for trial at any time they so desired, and that after the said case was put upon trial, the defendant, Walter Fowler, being first placed on trial, counsel were given·every opportunity to confer with him."

We are not here dealing with a question that is to be decided as a matter of law on pleadings, for the judge heard evidence upon the applicant's contention that ·he had· been denied the benefit of counsel and found the issue against him as one of fact. .Therefore his finding is conclusive if supported by substantial evidence. *Loyd* v. *State,* 151 *Ga.* 717· (108 S. E. 55) ; *Williams* v. *State,* 192 *Ga.* 247, 253 (15 S. E. 2d, 219). Under the evidence, the judge was authorized to find that no .request was· made of the trial judge either by the accused or his counsel for an opportunity to· confer privately and without the presence of the deputy marshal; and this being true, it does not appear that any right of the applicant was violated. The right so to consult in privacy can .not be gainsaid. Code, §§ 38-418, 38-419; Turner *v.* Texas, 91 Tex. Cr. 627 (241 S. W. 162, 23 A. L. R. 1378) ; .Thomas *v.* Mills, 117 Ohio 114 (157 N. E. 488, 54 A. L. R. 1220). This, however, is not a case in which the accused was alone and unacquainted with his rights. Contrast Johnson *v.* Zerbst, 304 U. S. 458 (58 Sup. Ct.. 1019, 82 L. ed. 1461). He had already been supplied with able attorneys, who must have known that the right of private conference would or should have been granted by the trial judge upon request, and it is only. reasonable to suppose that the request would have been made if his counsel had considered that any such conference was necessary or desirable. Under the evidence as the judge was authorized to view it, the mere existence of the right would not affect the validity of the applicant's conviction, for there must have been a denial of the right, or the equivalent of such denial, before he can complain. *Clarke* v. *Cobb,* 195 *Ga.* 633 (2) (24 S. E. 2d, 782) ; Garrison *v.* Amrine, 155 Kan. 509 (126 Pac. 2d, 228).

Nothing which we have just said is intended as ruling that even a denial of the right of the accused and his attorneys to confer privately under the circumstances shown would have caused the court to lose jurisdiction of the case so as to render a conviction

void and subject to attack by an application for the writ of habeas corpus. Seemingly, it would be a mere error, subject to correction only on motion for new trial or other procedure in the case, and could not be reached by habeas corpus. Jugiro v. Brush, 140 U. S. 291 (11 Sup. Ct. 770, 35 L. ed. 510); In re Schneider, 148 U. S. 162 (13 Sup. Ct. 572, 37 L. ed. 406); Andersen v. Treat, 172 U. S. 24 (19 Sup. Ct. 67, 43 L. ed. 351); Frank v. Mangum, 237 U. S. 309 (35 Sup. Ct. 582, 59 L. ed. 969); Goto v. Lane, 265 U. S. 393 (44 Sup. Ct. 525, 68 L. ed. 1070); Betts v. Brady, 316 U. S. 455 (62 Sup. Ct. 1252, 86 L. ed. 1595). However, even assuming that the question is one that could be raised by an application for such writ, still under the evidence adduced the judge trying the habeas-corpus case was authorized to find that the allegations as to a denial of the right of confidential communication were not proved. The same observation may also be made with respect to some or all of the other complaints, but we shall deal with the case throughout upon the mere assumption that all of the contentions urged were of such character as might be presented by an application for habeas corpus. See, in this connection, Bowen v. Johnston, 306 U. S. 19 (59 Sup. Ct. 442, 83 L. ed. 455); Waley v. Johnston, 316 U. S. 101 (62 Sup. Ct. 964, 86 L. ed. 1302).

The applicant also contends that he did not have a fair trial, for the reason that he was brought into the court-room on the morning when the trial began in custody of the deputy marshal, in plain view of the persons who afterwards composed the jury, was kept in such custody throughout the trial, and the fact that he was thus in the custody of such officer caused the jury to consider that he was a confirmed law violator and a dangerous criminal, and prejudiced the jury against him. It is not denied that the custody of the deputy marshal was lawful. The accused had been convicted of a Federal offense, and had thus brought himself into such custody. As was said by the United States Supreme Court in Ponzi v. Fessenden, 258 U. S. 254 (42 Sup. Ct. 309, 66 L. ed. 607, 22 A. L. R. 879), quoted in Fowler v. State, supra, "He [the accused] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." Nor can he complain that such custody was not wholly released.

One of the jurors who tried the murder case testified by affidavit that "the United States marshals brought the defendant, Walter Fowler, into the court-room before affiant was selected as a juror and in the presence of affiant, and said marshals sat near the defendant all the way through the trial, and the presence of the marshals indicated in the affiant's mind, and affiant could not help but know, that defendant was being held by said marshal for or on conviction of some other crime, and the situation was not favorable to the defendant." This affidavit could not properly be given any weight in the trial of the habeas-corpus case. Affidavits of jurors may be taken to sustain but not to impeach their verdict. Code, § 110-109. There was no other evidence tending to show prejudice as alleged, unless it be inferred from the bare fact of such custody. Substantially the same question was dealt' with in *Fowler* v. *State,* supra, and under the principles then noticed, there is no merit in the contention as now presented in this habeas-corpus case.

■ It is contended that the verdict and sentence were void, for the reason that the accused was involuntarily absent from the court during deliberations of the jury and at the time they reached their verdict, although he was present at the time the verdict was published. The evidence as to this point showed substantially the following: About 11 o'clock on the night of May 5, after the jury had been deliberating for some time, but had not reached a verdict, the judge instructed the deputy marshal to take the accused from the court-room and to have him back in court by 9 o'clock the following morning. The deputy marshal then returned with Fowler to the Federal penitentiary in Atlanta, without the limits of Forsyth County, and without the judicial circuit in which this county is located, the distance between the Federal penitentiary and the Forsyth County court-house being about 47 miles. The accused was placed in the Federal penitentiary for the night, and was carried back to the court-house at about 9 o'clock the following morning, as directed. The jury had agreed upon the verdict about an hour before Fowler and the deputy marshal, in returning from Atlanta, had reached the county line of Forsyth County. Some time later during the same morning, the jury were brought into court and the verdict was published in the presence of Fowler and his attorneys. Fowler contends that in being carried back to the Federal peni-

tentiary and away from the court-house in Forsyth County during deliberations of the jury, and in being thus involuntarily absent when they agreed upon the verdict, he was denied the right to be present at all stages of his trial, and was thereby deprived of a constitutional right, contrary to the due-process and equal-protection clauses of the State and Federal constitutions. This identical question was dealt with in *Fowler* v. *State,* supra, and was decided adversely to the plaintiff in error. Accordingly, referring again to that decision, not as res judicata, but merely as a statement of law, there is no merit in the contention as now presented in the habeas-corpus case. It may be further noted, however, that "the presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder *v.* Massachusetts, 291 U. S. 97 (54 Sup. Ct. 330, 78 L. ed. 674, 90 A. L. R. 575). It does not appear that anything happened during the defendant's absence that he could have prevented, or that he might have sought to prevent, if he had been present. So far as appears, there was no disorder, and the jurors presumably spent their time just as they would have spent it if the defendant had remained at the court-house. He would not have been permitted to interfere with their deliberations, and it does not appear that any one else interfered or attempted to interfere therewith. Nor does it appear that they at any time sought additional instructions, or that any similar matter occurred; and the presumption is that if any such thing had occurred the judge would have withheld all action until the accused was present. The time when the jurors were in seclusion, whether they were taking rest or were engaged in deliberation, did not constitute a stage of the trial at which the accused was entitled to be present, and as to this matter he is simply claiming a right that did not exist.

The applicant contends further that after he was convicted he was induced to give testimony against his codefendant, Austin Watson, who was next placed on trial, by assurance from Mr. Vandiviere, the solicitor-general, that if he would so testify it would aid him in getting a new trial, and that the testimony thus given by him instead of aiding him "served to keep said trial judge from making his sentence a life sentence, which he [the judge] had the right and authority to do." Under the evidence, the judge

was authorized to resolve this contention as to inducement, as an issue of fact, against the applicant. While the testimony of the applicant himself tended to support his allegation, Mr. Vandiviere testified that he did not at any time make any promise or agreement with the accused to assist him in getting a new trial, and he further testified: "On the contrary, I would not talk to him except in the presence of his counsel, and I asked him if he voluntarily desired to testify and he said he did, and I told him if he did it would not make any difference in his case at all, he could not expect anything from me about it. I did not authorize anybody else to extend him any inducement whatever for the purpose of obtaining his testimony in that case." Clearly, the judge was authorized under the conflicting testimony to believe the solicitor-general in preference to the applicant. While the applicant alleged that such assurance had been given to him by the solicitor-general "along with" Honorable John S. Wood, who assisted in the prosecution, he did not in his testimony claim that there was any conversation between him and Mr. Wood. Furthermore, the applicant had already been tried and convicted, and the verdict of guilty contained no recommendation; nor, in view of the direct character of the dying declarations, did the conviction depend solely upon circumstantial evidence. *Toliver* v. *State,* 138 *Ga.* 138 (74 S. E. 1000) ; *Jeffords* v. *State,* 162 *Ga.* 573 (3) (134 S. E. 169) ; *Mitchell* v. *State,* 170 *Ga.* 570 (153 S. E. 363) ; *Fowler* v. *State,* 196 *Ga.* 748 (2, 5), 751 (supra). In these circumstances, the judge would have had no authority to sentence the accused to life imprisonment. Code, § 26-1005.

■ In view of the motion for a new trial and prosecution of a writ of error (*Fowler* v. *State,* supra), execution of the original sentence was postponed, and therefore it became necessary for the judge to fix a new date for execution. It is declared in the Code, § 27-2518, that where the date for execution of any convict in a capital case has passed by reason of supersedeas or other cause, the judge of the superior court of the county where the case was tried shall have power and authority, without requiring the convict to be brought before him by habeas corpus, to pass an order in term time or vacation fixing a new date for execution of the original sentence, which new date shall not be less than ten or more than twenty days from the date of such order. This section was codified

from section 7 of the act of August 16, 1924 (Ga. L. 1924, p. 195). The applicant complained that the judge on February 21, 1944, passed an order resentencing him, which new sentence was imposed in the office of the clerk of the superior court of Forsyth County instead of in the court-room, and in the involuntary absence of the applicant, although he desired to be present in order to present a plea to the court to reduce his punishment to life imprisonment, the same as was given to his codefendant "by the same judge." One of the applicant's attorneys was present, but announced that no right of the applicant was waived. In his pleadings the applicant assailed section 27-2518 of the Code, and the act of 1924 from which it was taken, as being repugnant to the equal-protection and due-process clauses of the State and Federal constitutions (Code, §§ 1-815, 2-102, 2-103), and the provisions of the State constitution that no person shall be deprived of the right to defend himself in person, by attorney, or both, in any of the courts of this State, and that every person charged with crime shall have the privilege and benefit of counsel. Code, §§ 2-104, 2-105. The applicant also alleged that the procedure adopted by the trial judge was contrary to the same constitutional provisions.

While the new date of execution as fixed in the order of February 21, 1944, has itself passed, we deem it proper to rule upon the questions here raised, since it will be necessary for the judge to pass a further order fixing a date of execution. The defendant testified that he desired to be present at the time the order of February 21 was passed, that he had something he wanted to say to the judge.

As we have shown in division 4, supra, under the evidence and the terms of the verdict, the Judge at no time would have had a discretion to impose a sentence of life imprisonment. Moreover, even if the case had been such that he would have had a discretion originally, he could not have changed the sentence from one of death to one of life imprisonment after adjournment of the term at which the original sentence was imposed, and after the judgment refusing the motion for a new trial had been affirmed. *McCandless* v. *Conley*, 115 *Ga.* 48 (41 S. E. 256); *Miraglia* v. *Bryson*, 152 *Ga.* 828 (2) (111 S. E. 655); *Scarbrough* v. *Bell*, 193 *Ga.* 255 (17 S. E. 2d, 732). Such was the situation at the time of the order of February 21, 1944, and so, if the accused had been present, noth-

ing that he might have said or done could lawfully have brought about a modification of his sentence. This being true, he was not deprived of any right by the fact that he was involuntarily absent; nor, as applied to the facts, is there any merit in his attack upon the validity of § 27-2518. "What is commonly referred to as a resentence is only the fixing of a new time for the execution of a sentence. . . One sentence is all that is ever imposed in a capital case, and . . that sentence is to be executed, either at the time fixed therein, or at such other time as the judge . . shall fix thereafter." *Baughn* v. *State,* 100 *Ga.* 554, 559 (28 S. E. 68, 38 L. R. A. 577); *Mallory* v. *Chapman,* 158 *Ga.* 228, 231 (122 S. E. 884, 34 A. L. R. 310); *Gore* v. *Humphries,* 163 *Ga.* 106, 111 (135 S. E. 481). "Assuming that it was necessary for the defendant to have been present in court when the original sentence of execution was pronounced, as well as during other proceedings throughout the trial, in the absence of waiver (see Ball *v.* United States, 140 U. S. 118, 129, 11 Sup. Ct. 761, 35 L. ed. 377; Schwab *v.* Berggren, 143 U. S. 442, 12 Sup. Ct. 525, 36 L. ed. 218; *Franks* v. *State,* 120 *Ga.* 495, 48 S. E. 148; *Sarah* v. *State,* 28 *Ga.* 576 (10), 583; *Grady* v. *State,* 11 *Ga.* 253 (5); *Smith* v. *State,* 60 *Ga.* 430; 15 Am. Jur. 113, § 455), no violation of the due-process clause of the 14th Federal amendment appears, where the attack is not on the original sentence, but merely on an order fixing a new date of execution, entered without the presence of the defendant at that time, which order became necessary after the date fixed in the original sentence had passed by reason of a supersedeas pending the determination of a writ of error in this court." *Smith* v. *Henderson,* 190 *Ga.* 886 (2) (10 S. E. 2d, 921).

The foregoing deals with all of the substantial questions raised by the applicant. Under the pleadings and the evidence, the judge did not err in remanding him to custody.

*Judgment affirmed. All the Justices concur.*

WYATT, Justice, concurring specially. I concur in the judgment in this case. It is my opinion, however, that with the possible exception of the question dealt with in division five of the opinion, all questions raised in this habeas-corpus proceeding could and should have been made in a motion for new trial when the plaintiff in error was convicted, and can not now be raised by habeas corpus. I am unwilling even by inference or assumption

to substitute habeas corpus for a writ of error, or other remedial procedure to correct errors in the trial of a criminal case. I am of the opinion that the question raised in division five of the majority opinion could have been taken advantage of by a direct bill of exceptions, but, in any event, the conclusion reached with reference to this question is correct.

I am authorized to say that Justice Atkinson agrees with this special concurrence.